Michael J. HALPERN, individually, and as a stockholder of the Pennsylvania Railroad Co., on behalf of himself and all other stockholders of the said company similarly situated, Plaintiff,

v.

PENNSYLVANIA RAILROAD COMPANY, James M. Symes, Allen J. Greenough, James P. Newell, Fred Corpi, David C. Devan, Walter W. Patchell, J. Benton Jones, John D. Prizer, Ralph C. Champlin, James W. Oran, Park M. Roeper, John A. Schwab, James L. Cranwell, Bayard H. Roberts, William R. Gerstnecker, Hugh J. Ward, as officers of the said Pennsylvania Railroad Company, and James M. Symes, Allen J. Greenough, Richard K. Mellon, C. Jared Ingersoll, James E. Gowen, Philip R. Clarke, John A. Diemand, John B. Hollister, Joseph H. Thompson, R. George Rincliffe, Otto N. Frenzel, William L. Day, Gaylord P. Harnwell, Thomas L. Perkins, Edward J. Hanley, Fred Corpi, D. C. Bevan, and James P. Newell, as directors of the said Pennsylvania Railroad Company, Defendants.

Civ. No. 60–C–436.

United States District Court
E. D. New York.

July 18, 1960.

Michael J. Halpern, pro se.

Conboy, Hewitt, O'Brien & Boardman, New York City, Edward F. Butler, New York City, of counsel, for defendant Pennsylvania R. Co.

BARTELS, District Judge.

This action is brought by plaintiff individually, as a stockholder of the Pennsylvania Railroad Company (hereinafter referred to as the "Railroad"), and also on behalf of himself and all other stockholders of the Railroad similarly situated. In the complaint he seeks to enjoin the Railroad, its officers and directors from continuing to employ unnecessary personnel under "featherbedding" labor union rules and practices, and paying excessive amounts as compensation to employees under such rules and practices. The theory of the complaint is that such conduct on the part of the Railroad and its officers and directors constitutes a waste of assets of the Railroad and is *ultra vires*. Plaintiff moves for an injunction *pendente lite* and counsel fees, and the Railroad countermoves to dismiss the complaint and for summary judgment pursuant to Rules 12(b) and 56, Fed. Rules Civ.Proc., 28 U.S.C.A.

Plaintiff's affidavit in support of his motion details the "featherbedding" jobs and payments and asserts that the payments are based upon "speed of railroad trains obtaining 20 and 30 years ago"; that for many years there existed a contract between the Railroad and the various unions by which the Railroad was compelled to make "featherbedding" payments, and that this contract expired on November 1, 1959. In reply the Railroad by affidavit of its Director of Labor Relations states, among other things, that the employees in question are covered by collectively bargained agreements entered into on behalf of the respective crafts and classes by their representatives pursuant to the provisions of the Railway Labor Act (45 U.S.C., Chap. 8, Sec. 151 et seq.) [hereinafter referred to as "the Act"]; that these agreements are and will remain in effect until changed or terminated in accordance with the provisions of the Act; that they did not terminate as of November 1, 1959; that the "featherbedding" practices complained of are not only provided for by existing agreements but in some instances are imposed upon the Railroad by so-called "full crew" or "excess crew" laws of certain of the States within which it operates, and that pursuant to the Act certain proposals are being made by the Railroad and by the labor unions concerning changes in the present agreement rules.

■ An examination of the complaint discloses certain deficiencies which are dispositive of the action. Plaintiff does not allege his citizenship, the citizenship of the Railroad or that of the individual defendants, nor does he allege any law, treaty or provision of the Constitution of the United States which would grant jurisdiction to this Court in this action. Having no jurisdiction over the cause of action, the Court must dismiss the complaint. It appears that the plaintiff can promptly correct this deficiency, at least partially. Since the question of jurisdiction was not raised and the motion was argued upon the merits, the Court believes that in the interest of expeditious disposition of the matter upon an overcrowded calendar a comment upon the merits is warranted for future reference.

■ The doctrine of *ultra vires* has been subjected to many confusing and conflicting decisions. According to the strict construction of the term *"ultra vires"*, an *ultra vires* contract "is one not within the express or implied powers of the corporation as fixed by its charter, the statutes, or the common law" (Fletcher, Cyclopedia of the Law of Private Corporations, Vol. 7, § 3399, p. 561). But new concepts of Corporation Law have necessitated a new and different treatment of the problem. In the past,

the courts generally held the view that a corporation had only such powers as were granted to it by the Legislature and had no capacity to contract beyond those powers. In the more modern view, however, it appears that subject to certain statutory exceptions, the word "power" is treated as a misnomer for the word "authority", and the question appears to be not one of capacity as much as one of authority. The issue under this approach is not whether the corporation *could* make the contract, as indicated in Central Transportation Co. v. Pullman's Palace Car Co., 1891, 139 U.S. 24, 11 S.Ct. 478, 35 L.Ed. 55, but whether it *ought* to have made the contract (see Oleck, Modern Corporation Law, §§ 841 et seq.). In support of the traditional theory of *ultra vires,* numerous grounds have been advanced which have been analyzed and criticized by corporate law writers (see Ham, Ultra Vires Contracts under Modern Corporate Legislation, 46 Ky.L.J. 215 (1957–1958); Oleck, op. cit. supra; Fletcher, op. cit. supra, §§ 3399 to 3419). Generally speaking, the courts have refused to apply the doctrine to contracts which are wholly executed on both sides and a number of authorities have not permitted its application to a contract which has been fully performed by one side (see, Fletcher, op. cit. supra, § 3417). It has been observed that as far as contracts are concerned, there is no public policy behind the *ultra vires* doctrine but instead, the real public policy is in support of upholding the sanctity of contracts in commercial transactions (see Carpenter, Should the Doctrine of Ultra Vires be Discarded?, 33 Yale L.J. 49, 63–64 (1923); Stevens, Handbook on the Law of Private Corporations (2d Ed.), § 72, at 326 (1949).

With this background in mind, the challenged agreement and "featherbed" transactions may be examined. The contract with the union was made under the Act which imposes upon carriers and their officers the duty to exert every reasonable effort to make agreements concerning rates of pay, rules and working conditions "in order to avoid any interruption to commerce or to the operation of any carrier * * *" (Section 2, First) and also specifically prohibits carriers from changing these rules and rates of pay without complying with the terms of Section 6 of the Act (Section 2, Seventh). Section 6 of the Act sets forth the processes which must be invoked and the time periods which must elapse before such changes may be made (see Pennsylvania R. Co. v. Rychlik, 1957, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480; Elgin, J. & E. R. Co. v. Burley, 1945, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886; Virginian Ry. Co. v. System Federation No. 40, 1937, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789). In view of the provisions of the Act and the authorities construing the same, it is clear that the " * * * dominant inference that the Court has drawn from this fact is exclusion of the courts from this process of collaborative self-government." Pennsylvania R. Co. v. Rychlik, supra, 352 U.S. at page 498, 77 S.Ct. at page 430. A labor agreement made under these circumstances in good faith and with due diligence, however injudicious and disadvantageous to the corporation, cannot be said to have been made without the power or authority of the corporation (see Hornstein v. Paramount Pictures, Sup.1942, 37 N.Y.S.2d 404, affirmed 1944, 292 N.Y. 468, 55 N.E. 2d 740) and performance thereof cannot be enjoined without flagrantly violating the purport of the Act. Moreover, the States of New York, Ohio and Indiana compel the Railroad to maintain minimum sized crews on trains, including certain personnel who are unnecessary to the operation of the equipment.[1] Plaintiff does not dispute this, but asserts that the Railroad has not shown whether it would be unable to "be exempted from operating the 'full crew' provisions outside of the mentioned States." Changing the number of men in a crew at each crossing

---

1. New York statutes, Railroad Law, Secs. 54–a, 54–b and 54–c; Ohio Revised Code, Secs. 4999.06 to 4999.08; Burns' Indiana Statutes, 1941 Replacement, Secs. 55–1326 to 55–1338.

of a state boundary would not only be a difficult and inefficient operation but might in itself constitute waste and mismanagement on the part of the officers and directors. It could hardly be denied that it would constitute an undue burden upon interstate commerce (see Bibb v. Navajo Freight Lines, Inc., 1959, 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003). To repeat, the complaint charges waste by reason of excessive and unnecessary payments to employees pursuant to a labor agreement made pursuant to the Act and the "full crew" laws of certain States and under which there has been performance on both sides. These payments stem from uneconomic and wasteful anachronisms which have existed and resisted change for many years. There is no charge that a different labor agreement or arrangement could have been executed or that the Railroad could operate without a labor agreement or without such payments. Such an agreement and such transactions cannot be said to be *ultra vires* and there is no legal or equitable basis for their restraint. The chaos and waste which would result from an injunction under such circumstances are self-evident. Plaintiff's remedy lies with Congress and the legislatures of the States involved.

■■■■ Another obstacle to granting the relief prayed for is the absence of a necessary party. A stockholder's derivative suit is an equitable action and is, in effect, a combination of two suits, one against the corporation for refusing to comply with the stockholder's request and the other against the third party which contests the matter in controversy with the corporation (Hawes v. City of Oakland, 1882, 104 U.S. 450, 452, 26 L.Ed. 827; Koral v. Savory, Inc., 1937, 276 N.Y. 215, 218, 11 N.E.2d 883). In a stockholder's derivative action the corporation, which in this case is the Railroad, is only a nominal party defendant and is in reality the plaintiff (Chaplin v. Selznick, 293 N.Y. 529, 532, 58 N.E.2d 719, 720). Con-

sequently the complaint in effect is one by the Railroad for an injunction against itself to restrain the continued employment of those employees occupying positions unnecessary in the operation of the Railroad and to restrain the payment of excessive compensation to other employees. Here there is no *adverse* party. Such an injunction would constitute a finding or judgment that the labor agreement between the Railroad and the union and payments made pursuant thereto are void because they are *ultra vires*. In any suit of this nature the third party, which in this case is the union, is a necessary and indispensable party (Rule 19, Fed. Rules Civ.Proc., 28 U.S.C.A.). In actions involving similar facts the courts have not hesitated to dismiss the complaint in the absence of a necessary party to the agreement (Gilbert v. Burnside, 1958, 16 Misc.2d 1089, 177 N.Y.S.2d 202, modified 6 A.D.2d 834, 175 N.Y.S.2d 989; Schaffer v. Calvert Manor, Sup.1955, 147 N.Y.S. 2d 900; Benson v. City of Albany, N.Y. Sup.Ct.1857, 24 Barb. 248). In conformity with this principle a number of States have enacted specific legislation which provides that in an action by a shareholder to enjoin an unauthorized transaction pursuant to a contract between the corporation and a third party where the doctrine of *ultra vires* is asserted, all of the parties to the contract must be made parties to the suit.[2]

The Court concludes therefore that the complaint must be dismissed for lack of diversity jurisdiction, with leave to amend. Accordingly both plaintiff's motion and defendant's motion must be denied. Having heard the motion argued on the merits and having studied the briefs the Court believes it only fair to inform the parties that in its opinion (i) neither the labor agreement nor the payments made pursuant thereto are *ultra vires* under either the traditional or the modern theory of the doctrine and (ii) neither the performance of the labor agreement nor the "featherbed" pay-

2. See 15 Purdon's Pennsylvania Statutes Annotated § 2852–303, which states that when the doctrine of *ultra vires* is as-

serted in an injunction suit brought by a shareholder the other party to the contract must be made a party to the suit.

ments made pursuant thereto may be enjoined without the joinder of the union as a necessary party to provide adversity.

Settle order within five days on two days' notice.