COLONIAL TRUST CO. v. MONTELLO BRICK WORKS.

(Circuit Court of Appeals, Third Circuit. August 2, 1909.)

No. 32.

CORPORATIONS (§ 642*)—FOREIGN CORPORATIONS—"DOING BUSINESS IN STATE."
 A corporation organized under the laws of Delaware by residents of Pennsylvania for the purpose of owning the stock of and financing certain Pennsylvania corporations having the same officers and substantially the same stockholders and which in fact did nothing else, but maintained its office, held its directors' meetings, registered its bonds, and made the loans to the other corporations in Pennsylvania, was doing business in that state within the meaning of Act Pa. April 22, 1874 (P. L. 108), and its failure to file its statement and otherwise comply with the requirements of that act rendered its contracts made within the state void and unenforceable.

 [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. § 642.*

 For other definitions, see Words and Phrases, vol. 3, pp. 2155–2160; vol. 8, pp. 7640, 7641.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 163 Fed. 621.

Richmond L. Jones, Charles Henry Jones, and John G. Johnson, for appellant.

Harry F. Kantner, for appellee.

Wellington M. Bertolet, J. Howard Reber, Arthur G. Dickson, and Duane, Morris & Heckscher, on brief of objecting creditors.

Before GRAY and BUFFINGTON, Circuit Judges, and BRADFORD, District Judge.

BUFFINGTON, Circuit Judge. In the court below the claim of the Colonial Trust Company, trustee for bondholders of the United States Brick Company, against the Montello Brick Works, a bankrupt, was denied. Thereupon the trust company appealed. The claim in question consisted of promissory notes given by the bankrupt company to the United States Brick Company for borrowed money, and assigned as additional security for its bonds, to the Colonial Trust Company, trustee. The United States Brick Company was a corporation of the state of Delaware, and never registered as directed by the Pennsylvania act of 22 April, 1874 (P. L. 108), which provides:

"It shall not be lawful for any corporation to do any business in this commonwealth, until it shall have filed in the office of the secretary of the commonwealth, a statement under the seal of said corporation and signed by the president or secretary thereof, showing the title and object of said corporation, the location of its office or offices, and the name or names of its authorized agent or agents therein. * * * Any person or persons, agent, officer or employé of any such foreign corporation, who shall transact any business within this commonwealth for any such foreign corporation, without the provisions of this act being complied with, shall be guilty of a misdemeanor, and on conviction thereof shall be punished by imprisonment not exceeding thirty days, and by fine not exceeding one thousand dollars, or either, at the discretion of the court trying the same."

If the Delaware Company in the advance of this money and the taking of these notes was doing business in the state of Pennsylvania, the claim was rightly refused. Delaware Co. v. Passenger Ry. Co., 204 Pa. 25, 53 Atl. 533; Pittsburgh Construction Co. v. West Side Belt Ry. Co., 154 Fed. 929, 83 C. C. A. 501, 11 L. R. A. (N. S.) 1145. We turn then to the question whether it was so doing business.

Now, it may be conceded that, if the transaction here in question consisted simply of the loan of money made in Pennsylvania by a foreign corporation to a company in business in that state, we would under Construction Co. v. Winton, 208 Pa. 469, 57 Atl. 955, hold it was not doing business in that state. Moreover, if the alleged doing of business by a foreign corporation in Pennsylvania consisted simply in its purchase of stock in a corporation of that state, we would under Commonwealth v. Standard Oil Co., 101 Pa. 119, also hold this did not constitute doing business within the state. And it has been contended this was all that was done in this case. Regarded from mere surface view that may be the case, but when the transaction is judged by what was intended and done by all parties, including the Delaware

Company, we think it clear the latter was doing business in the state of Pennsylvania. This requires a due appreciation of the relation between the United States Brick Company and the Montello Brick Works. The Montello Brick Company, a Pennsylvania corporation chartered December 8, 1899, owned brick plants in that state. It leased its plants to the Montello Brick Works, the present bankrupt, a Pennsylvania corporation chartered December 4, 1902. The board of directors of the two companies at that time and during the transactions here detailed consisted of the same persons. On November 18, 1904, the same persons who were interested in both the Montello companies, with a view to financing a number of brick plants in Pennsylvania, in addition to the Montello plants, joined in the organization of a holding and promoting company under the laws of Delaware, and of which the directors in the two Montello companies became directors also. This Delaware Company took over the patents of one Gery covering a process for making brick, subject to a license held by the Montello Brick Works, paying therefor its entire capital stock to Gery. This stock was distributed in part to the stockholders of the two Montello companies, a part used as a bonus to accompany a proposed bond issue of the United States Brick Company and a part retained as treasury stock. The object of the creation of the Delaware Company was to develop these patents, and this was to be done by its financing of the Montello Brick Works, which company was to operate and develop the same at its plants. The loans in question were accordingly made to that company under arrangements made prior to the organization of the Delaware Company and to effectuate which purpose it was chartered. In pursuance of these financing plans the Delaware Company on December 24, 1904, executed a deed of trust to the Colonial Trust Company as trustee, whereby it conveyed to the latter 20,000 shares, being a majority it had acquired of the capital stock of the Montello Brick Company as security for an issue of 1,000,000 of its bonds. These bonds were made payable at Reading, Pa. The United States Brick Company covenanted to pay all taxes assessed by the state of Pennsylvania upon them, covenanted it would suffer no lien or incumbrance to be placed on the pledged stock of the Montello Brick Works or dispose of it; that it would permit no increase thereof; that on default of the Montello Brick Works it would pay all taxes upon its property. The trust then provided:

"Sec. 7. United States Brick Company shall from time to time make advances of moneys to Montello Brick Works to such extent as shall be necessary to insure sufficient and proper betterments, maintenances, extensions, improvements, equipments and alterations of its respective properties, and also to such extent as shall be necessary to pay all operating expenses and fixed charges, including interest, taxes and rentals, whenever the earnings of said Montello Brick Works shall be insufficient for the purpose; and to prevent an indebtedness of the said Montello Brick Works, resulting from said advances, in such way and manner as will injure the value as collateral of the shares of stock of Montello Brick Works held under this trust agreement, United States Brick Company agrees that it will take and will assign to trustee evidences of indebtedness resulting from all such advances, from time to time as the latter shall be made, and trustee shall hold the same as collateral security for the carrying out of the covenants of this collateral indenture. There shall be no duty upon trustee to collect such indebtedness,

and it shall not in any way be responsible for its failure so to do. The trust deed shall operate to vest in trustee an equitable title in and to said indebtedness for advances as the same from time to time shall arise. Interest on the said indebtedness until default under trust deed shall be collectible by United States Brick Company and shall not be payable to the trustee. Whenever said indebtedness shall be paid to United States Brick Company, the obligations or evidences of indebtedness shall be cancelled by the trustee and returned to Montello Brick Works."

In accordance with this covenant the money here involved was advanced by the United States Brick Company to the Montello Brick Works, the notes in question given, and subsequently assigned by it to the Colonial Trust Company as trustee. The proofs show the office of the company was in Reading, Pa. All of its directors, with the exception of a formal Delaware man, were residents of Pennsylvania. Its officers all resided at Reading, and did their official acts there; its books and bank accounts were kept there; its bonds were registered at Reading, and were payable there; the money in question was paid at Reading, and the notes executed there. Out of $300,000 of available funds the Delaware Company had about $267,000 were thus advanced by it in Pennsylvania to the Montello Brick Works and by that company used in Pennsylvania in accordance with the wishes of the Delaware Company. It will thus appear this company was called into being to do local Pennsylvania work. It had no purpose to exercise its charter power elsewhere than in that state, and it made no effort or pretense so to do. Everything it did was a local act and in fulfillment of the local purpose for which it was created. Manifestly its sole purpose was to avoid the requirements of the Pennsylvania laws in the issue of bonds and doing the financing necessary to enable the local company to carry on the local operations. Indeed, it is clear it was a mere extra-Pennsylvania agency called into being and locally utilized by a local company for the purpose of doing local work. On the part of the Montello Brick Works, while it was a case of facit per alium, it was none the less a case of facit per se. And viewed from the latter standpoint it is clear that all its operations were, as they were at all times intended they should be, a doing of business in Pennsylvania. Judged from the intent of all parties concerned and finding such intent emphasized by every proven act, we are clear the undoubted purpose of every one concerned was to have this company do business in Pennsylvania. Whatever its powers were to act elsewhere is quite apart from the present inquiry as to what it actually did in Pennsylvania. It is to be judged by the things it has done here, and not by those it has left undone elsewhere. While we recognize the legal principle that a corporation does not lose its entity by the ownership of the bulk or even the whole of its stock by another corporation (Monongahela Co. v. Pittsburgh Co., 196 Pa. 25, 46 Atl. 99, 79 Am. St. Rep. 685), yet it is equally well settled courts will look beyond the mere artificial personality which incorporation confers, and, if necessary to work out equitable ends, will ignore corporate forms (Penna. Knitting Mills v. Bibb Co., 12 Pa. Super. Ct. 346; Montgomery Co. v. Dienelt, 133 Pa. 585, 19 Atl. 428, 19 Am. St. Rep. 663; Kendall v. Klapperthal, 202 Pa. 596, 52 Atl. 92; Gas Co. v. West,

50 Iowa, 16). Indeed, we think the entire controversy was in terse terms summarized by the court below in saying:

"The brick company has an omnibus charter, under which it can do many things, but for present purposes it is enough to note that it was undoubtedly organized for doing just what it proceeded to do, namely, to acquire the stock of the bankrupt and to lend it money to carry on the operation of brick making under certain patents. This in a few words is the essential fact of the present controversy, and to state it is equivalent to drawing the conclusion."

Finding no error in the ruling of the court below, its order respecting the appellant's claim must be affirmed, and the present appeal dismissed.