Robert Dollar Company, Plaintiff, *v.* Canadian Car and Foundry Company, Limited, Impleaded with Others, Defendant.

(Supreme Court, New York Special Term, July, 1917.)

Service — of summons — when motion to set aside granted — corporations — agency.

A Canadian corporation which maintained a factory in this state organized a new corporation therein, retained all of the capital stock and assigned to it all of its contracts guaranteeing the completion thereof by the assignee. *Held*, that the New York corporation was not the agent of the Canadian company and that the latter was not doing business in this state so as to make the service of a summons on the New York corporation binding on the Canadian company.

MOTION to set aside service of summons.

T. Ludlow Chrystie, for motion.

Frederic E. Mygatt, opposed.

TIERNEY, J. This is a motion to set aside the service of the summons upon a foreign corporation through delivery of the same to one of its officers within this state, upon the ground that our statutes do not provide for such service where the defendant is not doing business within this state. The motion was made about a year ago, but its hearing has been adjourned while the question of the constitutionality of the section of the Code providing for service upon a foreign corporation has been taken to and decided by the Court of Appeals. *Robert Dollar Co.* v. *Canadian Car & Foundry Co.*, 220 N. Y. 207. The motion is now to be determined upon the question of fact of whether at the time of the commencement of this action the defendant was doing business within this state. The summons was served on July 29, 1916. Prior to March 8, 1916, this defendant was doing business in this state in connection with the performance of two contracts for the furnishing of munitions to the Russian government. The proofs leave no doubt of that, and it had as its local agent a domestic corporation, whose corporate name is Agency of Canadian Car & Foundry Company, Limited. This was organized by the Canadian company, which owns all of its capital stock. In March, 1916, the Canadian company assigned to the New York company the contracts with the Russian government and all the subcontracts that it had made with numerous firms or corporations for supplying the means of performing the main contracts, and the New York company agreed to complete the performance of the contracts. The

Canadian company guaranteed the completion of the contracts by its assignee, and the bonds of the surety companies which had guaranteed performance of the contracts by the Canadian company were continued as applicable to the performance of the contracts by the New York company. The Canadian company deposited its stock in the New York company with a local trust company, which transferred it to five trustees, who were to manage the same as a voting trust until the completion of the two main contracts, when the stock was to revert to the Canadian company. This voting trust placed the control of the New York company in the hands of nominees of the Russian government, that is, as to a majority of the trustees. The agreement between the Canadian company and the New York company was, in substance, that the New York company should have the benefit of everything that had been done toward the performance of the contracts by the Canadian company, and that it should confine its business to the completion of those contracts, and that when they were completed all the expenditures, including the advances that had been made by the Canadian company prior to the assignments, should be paid, and that any remaining property or proceeds should be the property and be reassigned or turned over to the Canadian company. For taking the place of the Canadian company and completing the contracts no provision seems to have been made for compensation to the New York company, but as the Canadian company owned all of the capital stock the question of whether it received a return from this business by a dividend on its stock or as net proceeds of the transaction would not affect the result of it. It is not claimed that this defendant was doing business within this state, unless the completion of its contracts by the New York company

constitutes such. That it continued to be vitally interested in the performance of those contracts is not denied. It had obligated itself to furnish many million dollars worth of munitions which it had to complete at the risk of bankruptcy. It had obligated itself to numerous parties upon subcontracts. If the main contracts were successfully performed it would be relieved of these many and onerous liabilities, and if there were a profit in the performance that profit would go to it. It had the same pecuniary interest on account of its original obligations, its guaranties and its agreements for the proceeds as if it had continued to perform the contracts as the principal. Because the Canadian company adopted the instrumentality of the New York corporation to have these contracts completed, the plaintiff urges that this established the relationship of agency, and that because the Canadian company was accomplishing its purpose through the agency of the New York corporation it was doing business by an agent. The fallacy of this argument rests on the confusion of the different meanings in which these two terms are used as being synonymous. A man might conduct an active and successful business and then retire by capitalizing the same in corporate form and retaining all of the capital stock. His business would go on without significant interruption. The same capital would be employed; he would lose by the same losses and gain by the same gains as theretofore. He would be doing what he did before in the business world through the agency of the corporation, but who would argue that the corporation was the agent of its sole stockholder, and that by reason of that ownership he was doing business through the corporation as his agent? That same situation is presented in this case. Since March 8, 1916, the principal who has been performing the con-

tracts with the Russian government and the contracts with the subcontractors is the New York corporation. Apart from the guaranties the only person who could be sued or could sue upon those contracts is the New York corporation. It holds the entire legal title to the contracts and to the rights growing out thereof and the incidental property used in connection therewith. Ultimately it must turn over the residue and the proceeds to the Canadian company, but while the contracts are under performance the Canadian company retains no interest in and control over any of those matters except the control that any majority stockholder may be considered to have over the actions of his corporation, and even this has been divested by the voting trust. That it has so large an interest in having the New York company successfully complete these contracts does not alter the legal relations of the parties. That such an interest impels it to furnish skilled representatives from its home force to act as directors of the New York corporation does not make them the agents of the Canadian company for doing business here, because the business that they are attending to is the business of the New York company, and as its officers or directors they are acting as the agent of the New York company and not of the Canadian company. I have examined the papers submitted with care and have given serious consideration to the questions argued and presented. It seems to me, however, that the question of fact is really a simple one, and that the defendant has succeeded in establishing that it was not doing business in this state at the time that the summons was served on one of its officers. Such attempted service was therefore invalid, and the motion to set the same aside is granted.

Motion granted.