Ultramar Company, Limited, Plaintiff, *v.* Minerals Separation, Limited, and Others, Defendants.*

Supreme Court, New York County, May 2, 1922.

Corporations — foreign corporation — motion by foreign corporation to set aside service of summons and complaint on ground it was not doing business here — prior to present action American corporation was formed, principally by residents of England, which took over business of defendant in this country — contract in suit, and two other incidental transactions, constitute all business done here since American corporation was organized — defendant is not doing business here — fact that defendant's agent here has general powers does not constitute doing business — service set aside.

In an action against a foreign corporation, resident of Great Britain, the service of a summons and complaint will be set aside on the ground that the corporation was not doing business in this State at the time of the service, since it appears

---

* See, also, 204 App. Div. 795, and 236 N. Y. 647.

that while the British corporation was doing business here at one time, it had, prior to the commencement of this action, transferred its American business to an American corporation, organized principally by Englishmen, and at the time the service was made, had simply a bare legal title to patents which were being promoted by the American corporation; that it had not maintained a bank account in this State, and had transacted no business here, with the exception of making the contract in suit and two other incidental transactions.

It cannot be said that the defendant was transacting business here simply because the American corporation was organized by and the stock therein was held principally by stockholders of the British corporation, for the American corporation was a distinct legal entity and was not the agent of the defendant.

Furthermore, the fact that the defendant had a general agent here operating under a general power of attorney, which authorized him to enforce, defend, answer or oppose all actions, does not make the defendant subject to service in this State on the ground that the agent was one on whom process might be served.

MOTION by defendant Minerals Separation, Limited, to vacate service of summons and complaint.

*Francis W. Aymar* [*Lindell Bates* of counsel], for the plaintiff.

*Cook, Nathan & Lehman* [*Emil Goldmark* of counsel, and *Alfred A. Cook* on the brief], for the defendant.

LEHMAN, J. The defendant Minerals Separation, Limited, has moved to vacate the service upon it of the summons and complaint herein, on the ground that it is a foreign corporation not doing business within the State, and that, therefore, the court has no jurisdiction of its person. The action is brought, not only against the moving defendant, which is a British corporation, but also against Minerals Separation North American Corporation, a Maryland corporation, which does not dispute that it is doing business within the State. The action is brought upon a contract negotiated by the British corporation in the State of New York and conditionally executed and delivered here.

The facts upon which the claimed conclusion that the British corporation is doing business in this State must be based are not substantially disputed, for, of course, all allegations made by the plaintiff upon information and belief, not supported by allegations of evidentiary facts and denied by the defendant, must be disregarded. In my opinion these facts are so clearly insufficient to justify a finding that the British corporation is doing business here that I should consider any analysis of the facts or detailed statement of my reasons for arriving at this conclusion unnecessary, except for the unusual care with which both parties have argued and briefed the question. For that reason only I will outline the considerations which I consider decisive on this question.

14

Supreme Court, May, 1922. [Vol. 126

The British corporation is engaged, according to the verified complaint, in the business " of negotiating for and acquiring or controlling chemical patents, of holding the same for its own benefit or as trustee, of licensing others to practice the inventions on a royalty basis, of collecting profits and damages from infringers, of installing flotation plants, of promoting the formation of subsidiary or affiliated corporations, and of financing them." In 1911 the British corporation granted Seth Gregory, a British subject, a power of attorney authorizing him to transact business for it in the United States. This power was never revoked, and Seth Gregory is now a resident of this State, and, acting for some years under the power, he granted licenses to other parties to use patents which stood in the name of the British corporation, though another corporation had beneficial rights therein.

In December, 1916, the American corporation was organized, and since then has been the beneficial owner of all these patents, and has itself granted all licenses thereto. Prior to the incorporation of this American corporation a power of attorney was granted to John Ballot, a British subject, who was then chairman of the board of directors of the British corporation. This power of attorney is in most general terms. Ballot proceeded to New York, and, acting under this power of attorney, entered into negotiations and agreements which resulted in the formation of the American corporation, and in October, 1916, a second power of attorney was issued to him, which again confers on him all the general powers previously granted, and in addition confers on him specific powers in connection with the organization of the American corporation and the transfer to it of property rights of the British corporation. After the American corporation was organized, Ballot resigned as chairman of the board of directors of the British corporation, but remained one of its directors, and became the president, treasurer, and a director of the American corporation, and Gregory became its vice-president, assistant treasurer, and a director.

Since that time the British corporation has retained only a bare legal title to its American patents, and the American corporation has not only granted all licenses thereunder, but has collected all the royalties thereunder, and the only connection apparent between the two companies is that the British corporation owns a very small number of shares of stock in the American corporation, represented by voting trust certificates, and the majority of shares of the American corporation were issued to shareholders in the British corporation. The British corporation is also acting as plaintiff in certain patent litigation as legal owner of American patents, but this litigation is being carried on for the benefit of and at the expense and under the

direction of the American corporation.   There is also an indemnity agreement between the two corporations, under which the British corporation is obligated in certain contingencies to perform certain acts as trustee for the benefit of the American corporation.

It is urged by the plaintiff that these facts show such connection between the two corporations that all business transacted by the American corporation must be regarded as the business of the British corporation, but I see no basis for this contention.   It is true that the " courts will look beyond the mere artificial personality which incorporation confers, and, if necessary to work out equitable ends, will ignore corporate forms " (*Colonial Trust Co.* v. *Montello Brick Works*, 172 Fed. 310, 313; 97 C. C. A. 144, 147); but it will do so only where " necessary to work out equitable ends," and where the corporate form which is disregarded is in fact a mere form, and there is a practical identity between the " artificial personality " and the real personality back of it.

In the present case the American corporation was not formed as a mere instrumentality to carry on business of the British corporation, but the business which it transacts is carried on for its own benefit and inures to the advantage of its own stockholders.   The mere fact that in large part the stockholders of the two corporations are the same is, of course, immaterial.   The stock owned by the British corporation itself in the American corporation is very small, but even if it owned all the stock that would not be conclusive.   If the corporate form of the American corporation is to be ignored it must be because the British corporation is in fact transacting its business here through the agency of this artificial personality; but here the proof shows only that, when the American corporation was organized, the British corporation transferred to it its beneficial interests under its American patents, and in so doing it was acting lawfully, and not for the purpose of avoiding any provisions of the statutes or laws of Great Britain or New York.   If the British corporation is conducting business in New York, it must then be because it is conducting here through its own officers or agents its own business. That business might include business conducted by it as trustee for others, but in any event it must be business which is not merely occasional or casual, but " with a fair measure of permanence and continuity."

The mere fact that Gregory and Ballot still hold unrevoked powers of attorney sufficient to enable them to conduct business for the British corporation, of course, does not show that they are still conducting business here.   The only business which the evidence shows has been conducted here by the British corporation since the incorporation of the American corporation concerned the execution of

the contract in suit, the collection of certain royalties from Chile, and the patent litigation carried on for the benefit of the American corporation. In connection with this business they used the office of the American corporation, and so far as the record shows this office was given as the address of the British corporation only in one letter which was sent in connection with the negotiation of the contract in suit, and there the address was not printed, but typewritten. That contract was negotiated by a special committee sent here for that purpose, and is not to be performed here.

The British corporation maintains no bank account here at the present time, and had not maintained any bank account previously, except that during the war and for one year thereafter royalties under the Chilean license referred to above were paid and deposited here to its account and then transmitted abroad, and a special account was at one time opened here in its name, to enable it to make one payment under the contract in suit. The patent litigation, as stated above, was conducted under the direction of the American corporation and for its benefit, and at its expense, and the British corporation, aside from being the nominal plaintiff, performed merely formal acts in connection therewith, and even this litigation was not brought in the courts of this State. No standard can be distinctly defined to measure the continuity and permanence of acts sufficient to bring a corporation within the jurisdiction of the courts of this State, but it seems clear to me that in the present case under no possible standard of measurement are the acts shown sufficient.

The only question which remains is whether the corporation has voluntarily placed itself within the jurisdiction of our courts by granting Ballot a power of attorney, which includes authority to " enforce, defend, answer, or oppose all actions." A non-resident or a foreign corporation may voluntarily submit to the jurisdiction of our court in any action, by appearance either in person or through an agent, and perhaps the power of attorney granted to Ballot might be sufficient to permit him to appear generally and defend, if he saw fit to do so; but it is merely a power, which becomes effective if and when exercised. It is true that where a foreign corporation, as a condition to receiving a license or privilege, has filed in the proper place the appointment of an agent, specifying that he " is authorized to receive for it " process in litigation, it has been held that the corporation has voluntarily submitted to the jurisdiction of our courts. (*Gibbs* v. *Queen Ins. Co.*, 63 N. Y. 114.) But in the present case, though Ballot's powers of attorney have been filed in Washington in connection with certain litigation, they have not been filed in any public office, in order to hold out Ballot as the proper person upon whom to serve process; they were not filed with intent or for the

purpose of submitting to the jurisdiction of the courts of this State; they were not made or filed as a condition of obtaining a license or privilege, and especially they do not purport to hold out Ballot as defendant's agent, upon whom any process in any action to be brought in this State could be served with the same effect as if served upon the defendant.

It follows that the motion to vacate should be granted, with ten dollars costs.