JOHN LEE STARK, Plaintiff, *v.* HOWE SOUND COMPANY, INC., and Another, Defendants.

Supreme Court, Chemung County, August 12, 1931.

*Gaylord Riggs* [*David N. Heller* and *Gardner & Moseson* of counsel], for the plaintiff.

*Stanchfield, Collin, Lovell & Sayles,* appearing specially for said defendant.

PERSONIUS, J. The plaintiff sues to recover damages for the alleged wrongful seizure, in Mexico, of mining lands and personal property. The summons was served in New York city on William J. Quigley, the president of both defendants. For convenience we will designate the defendant Campania Industrial El Potosi, S. A., as "industrial company," the defendant Howe Sound Company, Inc., as "Howe company," and El Potosi Mining Company as "mining company." The defendant industrial company moves to vacate the service on it upon the grounds that it is a foreign corporation, not engaged in business here.

Was industrial company at the time of the service of the summons upon its president doing business within the State of New York?

No precise rule has been formulated by which to determine this question in a specific case. Each case must depend upon its own facts. "All that is requisite is that enough be done to enable us to say that the corporation is here." This very general test was laid down in *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259, 268). The same authority states a guide somewhat more easy of application. In effect it says, a corporation is here if its representatives transact its business in this State "not casually and occasionally, but systematically and regularly * * * with a fair measure of permanence and continuity." It must here exercise some part of the business for which it was incorporated, though it need not be "the characteristic feature of the business." The principal part of its business may be conducted in the state of its

incorporation. (*Pomeroy* v. *Hocking Valley Ry. Co.*, 218 N. Y. 530, 535.) Some essential and integral part of its business must be here conducted. In most of the reported cases, the principal office from which the foreign corporation was controlled, managed and directed, was in the state of its incorporation, while some part of its operations was carried on here. The present case is the reverse. Industrial company owned no property in New York, its mill was located in Mexico and its operations there carried on. Its name did not appear on any office bulletin or door in New York, nor in the city or telephone directories. It had no salesmen any-. where. It sold nothing and bought nothing except equipment. Its executive management, if anything, was in New York.

Howe company, a Maine corporation, has its office at 730 Fifth avenue, New York city. It is a strictly holding or parent corporation, having four subsidiaries of whom industrial company and mining company are two. It owns all of the former's stock and nearly all of the latter's.

Mining company is a New Jersey corporation, owning mines and mining ore in Mexico.

Industrial company (the moving defendant) is a Mexican corporation, engaged in milling ore. (It neither owns nor produces ore except an insignificant quantity produced under a lease.) It mills ore for mining company. Each month it receives the cost of milling plus an agreed profit.

Howe company not being a Mexican corporation, could not own real estate there. It organized industrial company " to carry out the purposes of the Howe Sound Company." Its incorporators immediately transferred its stock to Howe company. The Howe company annually compiled and submitted to its stockholders a consolidated balance sheet which included the assets and liabilities of industrial company and other subsidiaries. Of the Howe company, William J. Quigley was president, Reeve Schley vice-president, W. J. Walworth vice-president and secretary, Emil Richter treasurer and assistant secretary. Of industrial company, William J. Quigley was president, Reeve Schley first substitute advisor, W. J. Walworth second substitute, Emil Richter substitute commissary. These four live in or near New York, and continuously devote practically all of their time to the New York office.

We do not hold that industrial company is doing business here merely because of this relationship between it and its parent company, Howe company. (*Ultramar Co.* v. *Minerals Separation, Ltd.*, 126 Misc. 208; 236 N. Y. 647.) However, considering all the circumstances of the present case, it approaches, if indeed it does not come within, the rule making a holding company liable. (*Costan*

v. *Manila Electric Co.*, 24 F. [2d] 383, and *Kingston Drydock Co.* v. *Lake Champlain Transportation Co.*, 31 id. 265.)

Nor do we hold that the residence of industrial company's president and other representatives in New York, alone, would subject it to our jurisdiction, though such residence is a fact mentioned and considered in many decisions. (*Riverside Mills* v. *Menefee*, 237 U. S. 189, 195.) As there stated: " Not the character of the residence but the character and power of the one served as an agent of the corporation, was the test of the right to acquire jurisdiction." It is not so much a question of where the officers and representatives of the foreign corporation resided but of what they did here, of the *acts* they performed here for the corporation and in connection with its business.

What acts did these officers, acting not as officers of the Howe company, but as officers of industrial company, *do here* for it and in connection with its business? In addition to the affidavits, we have the depositions of Messrs. Quigley, Richter and Walworth taken on this motion.

Mr. Quigley, the executive officer of industrial company, has his " headquarters " as its president " right here in New York City." Again, " My headquarters are here " (in New York). Mr. Ryan, the general manager in Mexico of both industrial company and Mining company, reported to President Quigley in New York and the latter gave orders and directions from New York to Mr. Ryan. " Q. What do you mean by operating orders, Mr. Quigley? A. Pertaining to the conduct of the operations of the Company. Q. And those were issued by you? A. Yes." Mr. Quigley, in New York, corresponded " as President of Industrial." He made " visits " of inspection to Mexico two or three times a year, remaining not to exceed two weeks at any time. The " policy of running the operation " was a matter of current discussion in the New York office, and " the plans for financing the defendant [industrial company] were formulated in New York."

It appears that industrial company had a first and second " advisor " living in Mexico and a " first substitute advisor," Mr. Schley, and a second " substitute advisor," Mr. Walworth, at the New York office. It also had a " commissary " living in Mexico, and a " substitute commissary," Mr. Richter, in the New York office. All are listed as " officers " in the moving affidavit.

Mr. Richter, as assistant commissary " a supervisory or advisory function in connection with the funds of the defendant Industrial." (He was treasurer of Howe company.) Under his supervision, a duplicate journal, ledger, cash book, check and bank book were

kept in New York, to "facilitate close supervision." They were kept by employees in New York. Industrial company paid Mr. Quigley "a designated salary as President of defendant Industrial." It paid its proper proportion of the rent and other office expense, including salaries of employees. Checks therefor were drawn in New York on its New York bank. As stated, industrial company's sole income was paid by check of mining company in Mexico. Such checks, when received, were forwarded unindorsed to New York. There they were indorsed and deposited in a New York bank to industrial company's credit. Mr. Richter supervised the books kept in Mexico and was "the executive in charge of checking up things." He performed his duties "mostly in New York," but said: "I, too, visit Mexico and make audits when I am down there." Although obtaining information from Mexico, he had the last say in the matter of accounting and bookkeeping. He and Mr. Walworth also testified under objection that "the matters of policy of the [mining company] are run from this [New York] office." The examination of the defendant's officers was in the nature of cross-examination and I think this evidence was properly received.

Mr. Walworth was known as second substitute advisor. (Mr. Quigley thought this meant substitute director.) He signed and countersigned checks in New York and had charge of the files. Industrial company had stationery in Mexico bearing the inscription in Spanish "Office in New York, 730 Fifth Avenue." It had stationery in New York bearing the words "New York office, 730 Fifth Avenue." While deeds, leases, etc., were kept in Mexico, "the leases were submitted to New York and then returned to Mexico and kept on file there." In other words, they were *passed on* in New York. He corresponded with Mexico in connection with insurance matters, etc. All his duties were performed in New York. According to Mr. Quigley, Mr. Walworth was a member of the "advisory board" which could recommend to the board of directors.

Industrial company had *a* small bank account in Mexico. It was replenished from New York. A duplicate of the account was kept in New York but *the* bank account was kept in a New York bank. It was a substantial account. Checks thereon were drawn in Mexico but they were apparently for current operating expense, payroll, etc. Checks were drawn in New York. These covered more than office expense, president's salary, insurance, etc. In 1926, 1927 and 1928 very substantial checks were drawn to other subsidiaries, apparently covering indebtedness of industrial company. Later surplus funds of the subsidiaries were invested in

call and time loans. The checks for industrial company's participation therein were drawn in New York. The officials in New York, after consultation there, made not only these loans but substantial investments in bonds. The investments run from $25,000 up to $100,000. Mr. Richter testified: "Q. Do you ever consult the Mexican officials or employees about making any investment? A. No." It appears that the plans for financing industrial company were not only formulated in New York city, as Mr. Quigley testified, but carried out there without considering the officials in Mexico. Industrial company regularly received mail at the New York office. The letters and telegrams copied from the file indicate that the manager in Mexico reported to the president in New York and followed the latter's directions. Its directors' meetings were held in Mexico. However, as a board, they do not appear to have directed to any great extent. They met only when President Quigley happened to be on a visit to Mexico, and not then unless there was some subject requiring the attention of the board. It can fairly be inferred that industrial company, being a Mexican corporation, was required to hold its directors' meetings in Mexico, but that they only met when some official action by the directors was required by law, leaving the direction of the business entirely to President Quigley and his associates in New York.

We have detailed at great length the acts done and duties performed in New York by the moving defendant's officers and representatives. It is from these acts that we determine whether it is here. We hold that the defendant industrial company was engaged in business in the State of New York. It was controlled, directed and managed by its president and certain other officers from their office and headquarters in New York. In effect, the executive office of said defendant was in New York and its executive officers there performed their duties as such. They did this not casually and occasionally, but systematically and regularly, permanently and continually, from its incorporation, to the present time. We think it was " doing business within the State in such manner and to such extent as to warrant the inference that it is present here." (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259; *Washington-Virginia Ry. Co.* v. *Real Estate, etc., Co.*, 238 U. S. 185; *International Harvester Co.* v. *Kentucky*, 234 id. 579; *Grant* v. *Cananea, etc.*, 189 N. Y. 241; *Pomeroy* v. *Hocking Valley Ry. Co.*, 218 id. 530; *Rothenberg* v. *Western Pacific R. R. Co.*, 206 App. Div. 52; *Stockton* v. *Goodyear Tire & Rubber Co.*, 124 Misc. 213; *Henriques* v. *Gauthiod, etc., Co.*, 205 App. Div. 8; *St. Louis S. W. Ry.* v. *Alexander*, 227 U. S. 218; *Mingus* v. *Florence, etc., Co.*, 302 Penn. St. 529.)

As each case must depend upon its own facts in determining

this question, we do not expect to find parallel authorities, but we think the cases we have cited show that it is not essential that a foreign corporation locate any physical assets or carry on any mechanical operations in New York. It is enough if its executive office is here, wholly or in part; if its officers and/or representatives here exercise control, give directions and manage its business. In the *Pomeroy Case (supra)* the president used the parent company's office in New York, the secretary resided and had his only office in New York, the defendant paid rent and other obligations there. It neither had nor operated any physical property in New York. The court said (p. 535): " The fact that the corporation is conducting the principal part of its business in the State of its incorporation does not prevent it from so prosecuting its business in another State as to bring it within the character of a corporation doing business in the latter State. While it is true that the business which it is conducting in the latter State in order to give the courts thereof jurisdiction over it for the purposes now being discussed must be part of the business for which it was organized, it cannot be necessary in every case that the transactions in said latter State shall be the performance of those particular acts which constitute the characteristic feature of the business for which the corporation was organized. It is not essential in this case that the defendant for the purposes now being discussed should here actually locate its tracks, operate its rolling stock or solicit traffic. *It is an indispensable condition and incident to these latter operations and to the conduct of business that general supervision should be exercised over the management of the corporation by its board of directors, executive committees and executive officials, and that provision should be made for meeting its financial obligations in order that the corporation may be kept out of bankruptcy and be permitted to carry on its business.*" In the *Stockton Case (supra,* 215), LEWIS, J., said: " its financial operations are not only an integral but a very important part of its business, without which perhaps, the manufacturing of its product in Ohio might only be incidental." The facts in these cases are not identical with, but the principles announced apply to, the present case.

In *St. Louis Ry.* v. *Alexander (supra)* the defendant railroad had only a claim agent in New York. In *Washington-Virginia Ry.* v. *Real Estate, etc. (supra)* the defendant had no tracks and did not operate in Pennsylvania. It paid rent for desk room in Pennsylvania for its president, treasurer and bookkeeper. Its directors had not formally authorized the maintenance of an office in Pennsylvania. In *Mingus* v. *Florence, etc. (supra)* the defendant, a Delaware corporation, operated a mine in Utah, but had its

executive offices in Pennsylvania. It probably is a stronger case than the present. In holding that it was doing business in Pennsylvania, the court said: " They [plaintiffs] show that its real business headquarters are located there, that its executive directions come from there, and its financing is there carried on. Indeed, it carries on some of the most important of its business affairs there." We could fairly use this language in the present case.

In *Grant* v. *Cananea (supra)* the facts are similar to the present case. There was a holding company and two subsidiaries; one Greene owned a majority of the stock of all three corporations and was the president of each. The holding company had an office in New York, from which President Greene apparently conducted the business of all three companies. The court held that service upon Greene, as president of the subsidiary foreign corporation, was valid and gave our court jurisdiction of said corporation. In discussing the facts, we think the court unfortunately failed to distinguish between Greene's acts as president of the holding company and his acts as president of the subsidiary. It said: " The business of the [subsidiary] is managed, controlled and its business conducted by the [holding company] through its president and officers at its office in Broad street in the city of New York." In effect, it said that the common president, from his New York office, managed the subsidiary through the holding company. It is a fair inference that he managed the subsidiary *as its president*. Thus construed, we have a case of a subsidiary incorporated and operating in Mexico, but managed and controlled by its president in New York. The decision was so treated in *Compania Mex., etc.,* v. *Compania Met., etc.* (223 App. Div. 346, 349; affd., 250 N. Y. 203), where, speaking of the *Grant* case, the court said: " Greene was the president of both corporations and *as president of the Mexican corporation conducted its affairs from an office in New York.*"

The moving defendant suggests that the *Pomeroy* and *Grant Cases (supra)* have been overruled or discredited. So far as they are authority for the proposition that a foreign corporation is here, if it is here supervised, directed and controlled by its executive officials, we do not think they have been questioned. The *Pomeroy* case was cited with approval in *Feinberg* v. *Board, etc., Co.* (218 App. Div. 777); *Henriques* v. *Gauthiod, etc., Co.* (205 id. 14); *Holzer* v. *Dodge Bros.* (233 N. Y. 216, 221), and its authority " conceded " in *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259, 268). In *Dollar Co.* v. *Canadian Co.* (220 N. Y. 270, 274) our Court of Appeals said: " This question * * * was not there [in the *Pomeroy* case] fairly presented." What question? The *Dollar Company* case

(*supra*) did not consider the question as to when a foreign corporation was doing business in this State. The appeal was from an order of reference to take depositions showing the facts upon which that question might be determined. The *Dollar* case only considered the constitutionality of section 432 of the Code of Civil Procedure, now section 229 of the Civil Practice Act, and the validity of the service of process under that section. As to the *Grant* case, *Compania Mex.* v. *Compania Met.* (250 N. Y. 203, 208), cited by the defendant, says: " In the case of *Grant* v. *Cananea* * * * the president of the defendant corporation *directed its affairs as president.* He acted under authority conferred by the corporation. *Such directions* may perhaps constitute corporate acts and conceivably, if habitually given, might constitute the transaction of corporate business. Not so, where the directions are given only by a controlling stockholder who has no authority to represent the corporation or to act for it." The *Compania Mex.* case, therefore, does not question the authority of the *Grant* case but distinguishes it, and properly so.

In the *Compania Mex.* case the defendant had no officer, director or employee conducting any of its corporate business here. It was controlled only by stock ownership. The parent company merely exercised its stock control. Nothing was done in New York by any officer or agent of the defendant. " The decisive factor in this case," says the court (p. 210), " is that the business here was not transacted by officers, agents or employees of the defendants, chosen and controlled by them. It was transacted by the officers, employees or receivers of other corporations transacting the business of the corporations they represented rather than the business of the defendant corporations At no time was there present in this State any representative of the defendants who regularly conducted their business." In the present case quite the contrary is true.

Certain dicta in the *Grant* case (following the decision of *Pope* v. *Terre, etc., Co.,* 87 N. Y. 137) to the effect that jurisdiction of a foreign corporation may be obtained by service upon an officer, in this State, temporarily, and not on corporate business, is properly criticised in *Bagdon* v. *Philadelphia, etc.* (217 N. Y. 432, 438). Such service does not confer jurisdiction but such criticism does not go to the question as to whether the corporation is doing business here. That fact was conceded in the *Bagdon* case. Furthermore, the *Grant* case did not follow its own dicta, but recognized and followed the Federal rule which has since been fully adopted in New York. (*Dollar Co.* v. *Canadian Co., supra.*)

Of the cases cited by the defendant we have already referred to *Compania Mex.* v. *Compania Met.* (250 N. Y. 203). *Ultramar*

*Co.* v. *Minerals Separation Ltd.* (126 Misc. 208; revd., 236 N. Y. 647) and *Cannon* v. *Cudahy Co.* (267 U. S. 333; 69 L. Ed. 634), like *Dollar Co.* v. *Canadian Co.* (100 Misc. 564; affd., 180 App. Div. 895), are pure stock control cases, where no officer or agent of the foreign corporation did any of its business here. The *Holzer Case* (233 N. Y. 216), and the *Lillibridge Case* (247 id. 548), and the *Hamlin Case* (246 id. 554) are typical cases where a foreign corporation sold goods here. *Green* v. *Chicago, etc., Ry.* (205 U. S. 530) was by the same court referred to as " an extreme case." (*International Harvester Co.* v. *Ky.*, 234 U. S. 579, 586.)

Holding as we do that the moving defendant industrial company was here doing business in New York, there can be no question of the regularity of the service of process. It was served upon its president in New York where he performed his duties as such president. (Civ. Prac. Act, § 229.)

This motion was made on the ground that defendant industrial company was a foreign corporation not engaged in business in New York. It is also argued that, if it was, the service of process herein upon its president does not give this court jurisdiction because each of the alleged causes of action is wholly unconnected with any corporate action by it within the State. To this argument there are, we think, two answers. *First,* under the New York statutes (Gen. Corp. Law, § 224, as amd. by Laws of 1929, chap. 650; Civ. Prac. Act, § 229) and the construction thereof by the New York courts, which is controlling, service upon the defendant's president here " officially representing the corporation in its business," gives this court jurisdiction, even though the cause of action was not connected with the corporate business transacted in this State. " But when a foreign corporation is engaged in business in New York and is here represented by an officer, he is its agent to accept service though the cause of action has no relation to the business here transacted." (*Bagdon* v. *Philadelphia Co.*, 217 N. Y. 432, 438; *Tauza* v. *Susquehanna Coal Co.*, 220 id. 259, 268, 269; *Barrow Co.* v. *Kane*, 170 U. S. 100, 109; *Johnston* v. *Atlantic, etc., Co.*, 128 Misc. 82; *Mass., etc., Co.* v. *Concrete, etc., Co.*, 37 F. [2d] 695; 30 A. L. R. 258.) Where the plaintiff is a *resident,* the question of jurisdiction is not even discretionary with the court. (*Jacobsen* v. *U. S., etc., Corp.*, 128 Misc. 138, 140; *Douglas* v. *N. Y., N. H. & H. Ry. Co.*, 279 U. S. 377.)

In *Louisville, etc.,* v. *Chatters* (279 U. S. 320, 328), cited by defendant, the decision is based upon a Louisiana statute which provided that process might be served upon a designated agent in an action " growing out of or connected with the business done ·by said

corporation in this State." The court said: "For present purposes we may assume that the effect of the designation * * * is, as the state decisions cited seem to show, that a cause of action arising wholly outside and wholly unconnected with any act or business of the corporation within the State may not be sued upon there." The New York statute as construed by the above authorities contains no such limitation. *Second*, it may be fairly inferred from the corporation's method of doing business that the alleged causes of action were connected with the corporate action in this State, and with the business it did here. The corporation was controlled, directed and managed here. The exhibits copied from the defendant's files show that the transactions out of which the causes of action are alleged to have arisen were the subject of consideration by the president of said corporation in its New York office and were determined and directed therefrom. In the telegram of June 20, 1928, General Manager Ryan in Mexico requested telegraphic authorization from W. J. Quigley in New York. In the other communications he fully reported all of said transactions to New York. Such acts in New York might not of themselves " have been regarded as a doing of business within the State sufficient to establish the presence " of industrial company here, but they would be sufficient for the purposes of jurisdiction of this case, even under a statute similar to that in Louisiana. (*Louisville, etc., v. Chatters, supra.*)

The motion is denied.