J. POTTER STOCKTON and Others, Plaintiffs, *v.* THE GOODYEAR TIRE AND RUBBER COMPANY, Defendant, and Four Other Separate Actions by Different Plaintiffs against the Same Defendant.

Supreme Court, Kings Special Term, December 26, 1924.

Corporations — foreign corporations — motion to set aside service of summons and complaint on foreign corporation — pleadings served on assistant secretary of defendant residing within State — chairman of defendant's board of directors, assistant secretary and staff of inspectors engaged in continuous performance of regular business of corporation within State — motion denied.

Defendant's motion to set aside the service of a summons and complaint made upon its assistant secretary, who resided within this State, on the ground that the service was insufficient to confer jurisdiction over the defendant, a foreign corporation, should be denied, where it appears that the defendant, in addition to maintaining offices within the State for the chairman of its board of directors and assistant secretary at which meetings were held, maintained a staff of crude rubber inspectors within the State, and that all of said persons were engaged in the continuous performance of a substantial portion of the regular business of the corporation within the State.

MOTION to set aside service of summons and complaint upon the ground that service was insufficient to confer jurisdiction over defendant, a foreign corporation.

*Folger & Rockwood* [*Henery L. Stimson*, *N. Otis Rockwood*, *Allen T. Klots* and *Arthur E. Pettit* of counsel], for the plaintiffs.

*Cotton & Franklin* [*Edward L. Williams* of counsel], for the defendant.

LEWIS, J.:

This is an application to set aside the service of a summons and complaint on the ground that the attempted service of such papers was insufficient to confer jurisdiction upon this court over the person of the defendant, a foreign corporation, organized under the laws of the State of Ohio, which maintains no office, transacts no business and owns no property in the State of New York. The papers were served concededly upon C. F. Stone, an assistant secretary. The affidavits show that said assistant secretary and one Wilmer, formerly president of the defendant corporation, but now chairman of its board of directors, are residents of New York. Several affidavits of the president of the defendant, all sworn to in Ohio, repeatedly state that the acts performed by said Wilmer (now in New York) in behalf of the defendant are " limited to the advising of action at Akron, Ohio, and all such action so advised is taken without the State of New York. All other acts are purely incidental and deal with the corporation's financial affairs and corporate organization and existence." Although Wilmer's activities are thus described, there is not furnished with the papers in support of the application any affidavit of Wilmer to show what these " incidental activities " are. Resort must, therefore, be had to the many statements contained in the opposing affidavits for information as to what the defendant is doing through Wilmer in the State of New York. I am satisfied that the defendant maintains an office at 120 Broadway, New York, and has a telephone listed at such office; that meetings of the board of directors have been held at such office. Similar meetings are held at the office of the general counsel of the defendant company in the city of New York. It is stated that these meetings of the board of directors have had nothing to do with the manufacture and sale of its products, all of which have been without the State of New York, *but were only incidental thereto in connection with its financial affairs and its corporate structure and existence;* that at least one bank account is maintained in the city of New York; that its bonds are payable at the office or agency of the company in the city of New York; that two of its transfer agents are banking institutions in New York; that it did maintain a staff of men in the State of New York for the purpose of handling and inspecting shipments of crude rubber.

In addition to all of the foregoing, there appears a published statement, dated April 14, 1923: " He [meaning Wilmer] will permanently locate in New York, continuing to assume and carry full personal responsibility for the supervision and guidance of the Goodyear management." In February, 1924, Chairman Wilmer

says, during 1923 there was acquired $14,902,500 of prior preference stock, there was retired and canceled $1,500,000 of first mortgage bonds and $2,500,000 of debenture bonds; that provision has been made for the retirement of $1,500,000 of the debenture bonds on March fifteenth next; continuing with the statement that " Sales are being currently obtained in heavy volume for this season and with every effort directed to greater economy of operation we look forward to satisfactory business in 1924." These statements and others were made with reference to production and sales of its manufactured product.

The courts have said that " there is no precise test of the nature or extent of the business that must be done." (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 268.) This question must largely be decided by the particular facts in each case. (*Pomeroy* v. *Hocking Valley R. Co.*, 218 N. Y. 530, 535; *People's Tobacco Co.* v. *American Tobacco Co.*, 246 U. S. 79, 87.)

While it is true that the defendant is engaged in manufacturing products in Ohio, it did deem it necessary to have the chairman of its executive committee here with " full personal responsibility for the supervision and guidance " of its business, and with some supervision by its governing board and with very substantial provision for the meeting of its financial obligations. That its secretary permanently resided and had an office here was undoubtedly for the purpose of having him perform duties which were necessary to the transaction of its business.

These and the other activities and things, in the language of *Pomeroy* v. *Hocking Valley Railway Co.* (*supra*), " were being discharged in order that the corporation might  *  *  *  transact its regular business, and through these boards, committees and officials the corporation was transacting business at the place where they had their offices, held their meetings and discharged their duties."

Viewed in the light of the decisions, it sufficiently appears that the defendant is continuously performing a very substantial portion of its business within this jurisdiction; that its financial operations are not only an integral but a very important part of its business, without which perhaps the manufacturing of its product in Ohio might only be incidental.

The motions are denied.