CHARLES CHAPLIN, Suing on Behalf of Himself and All Other Stockholders of United Artists Corporation Similarly Situated, Respondent, *v.* DAVID O. SELZNICK et al., Defendants, and DAVID O. SELZNICK PRODUCTIONS, INC., et al., Defendants-Appellants.

Argued October 2, 1944; decided November 30, 1944.

*Lowell Wadmond* and *Chester Bordeau* for defendants-appellants appearing specially. I. Service of process on Productions should be vacated. Productions was completely liquidated and dissolved long prior to service of process. (*Yeckes-Eichenbaum, Inc.,* v. *McCarthy,* 290 N. Y. 437; *Gaboury* v. *Central Vermont Ry. Co.,* 250 N. Y. 233; *Western Hair Goods Co.* v. *Haberkorn Co., Inc.,* 131 Misc. 930; *People's Tobacco Co.* v. *Am. Tobacco Co.,* 246 U. S. 79; *Chipman, Ltd.,* v. *Jeffery Co.,* 251 U. S. 373; *Boyle* v. *Lakeview Creamery Co.,* 9 Cal. 2d 16; *Sinnott* v. *Hanan,* 214 N. Y. 454; *White Mountain Paper Co.* v. *Morse & Co.,* 127 F. 643; *Smith* v. *Compania Litografica De La Habana,* 121 Misc. 368; *Acton* v. *Washington Times Co.,* 12 F. Supp. 257.) II. Service of process on Vanguard should be vacated. The activities carried on by Vanguard in New York

are no part of its main business of producing motion pictures. (*Holzer* v. *Dodge Brothers*, 233 N. Y. 216; *Yeckes-Eichenbaum, Inc.*, v. *McCarthy*, 290 N. Y. 437; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259; *People's Tobacco Co.* v. *Am. Tobacco Co.*, 246 U. S. 79; *Hunau* v. *Northern Region Supply Corporation*, 262 F. 181; *Lillibridge, Incorporated* v. *Johnson Bronze Co.*, 220 App. Div. 573, 247 N. Y. 548; *Henry M. Day & Co.* v. *Schiff, Lang & Co.*, 278 F. 533; *Dollar Co.* v. *Canadian C. & F. Co.*, 220 N. Y. 270; *Bagdon* v. *Phil. & Reading C. & I. Co.*, 217 N. Y. 432.) III. The activities carried on by Vanguard's New York office amount to no more than a preliminary solicitation of literary properties and services to be used by Vanguard in its business in Culver City, California. (*Green* v. *Chicago, Burlington & Quincy Ry.*, 205 U. S. 530; *Davega, Inc.*, v. *Lincoln Furniture Mfg. Co.*, 29 F. 2d 164; *Pennrich & Co., Inc.*, v. *Juniata Hosiery Mills, Inc.*, 247 N. Y. 592; *Yeckes-Eichenbaum, Inc.*, v. *McCarthy*, 290 N. Y. 437.) IV. The amount of solicitation activity in New York is insubstantial in comparison with the total amount of such activity carried on by Vanguard in Culver City, California. (*Yeckes-Eichenbaum, Inc.*, v. *McCarthy*, 290 N. Y. 437; *Wolitz* v. *India Tire Co.*, 10 F. Supp. 53.) V. Miss Flagg, in Vanguard's New York office, is not invested with general powers involving judgment and discretion. (*Yeckes-Eichenbaum, Inc.*, v. *McCarthy*, 290 N. Y. 437.)

*Louis D. Frohlich* and *Herbert P. Jacoby* for respondent. I. Defendants are doing business in New York and the courts of this State have jurisdiction over them. (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259; *Meinhard, Greeff & Co.* v. *Higginbotham-B.-L. Co.*, 262 App. Div. 122; *Cochran Box & Mfg. Co.* v. *Monroe Binder Board Co.*, 197 App. Div. 221, 232 N. Y. 503; *Interocean Forwarding Co.* v. *McCormick & Co.*, 168 N. Y. S. 177, 183 App. Div. 883; *Brown* v. *United States Daily Publishing Corp.*, 146 Misc. 539, 239 App. Div. 777; *Halpin* v. *North American Refractories Co.*, 151 Misc. 764; *Madison Distributing Co., Inc.*, v. *Phoenix P. D. Works, Inc.*, 135 Misc. 543; *National Furniture Co.* v. *Spiegelman & Co., Inc.*, 198 App. Div. 672; *Fleischmann Construction Co.* v. *Blauner's*, 190 App. Div. 95.) II. The institution of proceedings in California to dissolve David O. Selznick Productions, Inc., is no bar to the jurisdiction of the courts of this State. (17 Fletcher on Cor-

porations, § 8583; Civil Code of California, § 399; *Boyle* v. *Lakeview Creamery Co.*, 9 Cal. 2d 16; *Sinnott* v. *Hanan*, 214 N. Y. 454; *White Mountain Paper Co.* v. *Morse & Co.*, 127 F. 643; *Smith* v. *Compania Litografica De La Habana*, 121 Misc. 368; *Holmes* v. *Camp*, 180 App. Div. 409; *Acton* v. *Washington Times Co.*, 12 F. Supp. 257; *Floerchinger* v. *Sioux Falls Gas Co.*, 68 So. Dak. 543.)

CONWAY, J. This is a stockholders' derivative action brought on behalf of United Artists Corporation (hereinafter referred to as " United ") against David O. Selznick Productions, Inc. (hereinafter referred to as " Productions "), Vanguard Films, Inc. (hereinafter referred to as " Vanguard "), David O. Selznick, Twentieth Century-Fox Film Corporation (hereinafter referred to as " Twentieth Century ") and United Artists Corporation.

As to the defendant corporations, the complaint alleges that United is a Delaware corporation having its principal place of business in the city and State of New York, and that Twentieth Century is a corporation organized and existing under the laws of the State of New York. As to Productions and Vanguard, the complaint alleges that each was organized under the laws of the State of California, and has an office for the transaction of business at 515 Madison Avenue in the City and State of New York " and has been transacting and does transact business in said State of New York." The residence of the nominal plaintiff is unimportant, since he is but the " instigator " of the action on behalf of United.

Productions and Vanguard appeared specially and moved to vacate service of the summons and complaint upon the ground, as to each, that it was not subject to the jurisdiction of our State courts because it was not transacting business here.

Upon the denial of that motion and its affirmance by the Appellate Division, two questions were certified to us as follows:

" 1. Was the defendant, David O. Selznick Productions, Inc., doing business within the State of New York to such an extent as to subject it to the service of process in New York?

" 2. Was the defendant, Vanguard Films, Inc., doing business within the State of New York to such an extent as to subject it to the service of process in New York? "

While neither Special Term nor the Appellate Division made express findings of fact, the Appellate Division certified that the findings of fact made by the court at Special Term were affirmed. (See Civ. Prac. Act, § 603.) We must assume, therefore, that all controverted questions of fact in the record have been determined in favor of plaintiff.

The question presented, then, is whether, on those facts, Productions and Vanguard have been or are transacting business in this State. When a corporation created in one State goes into another, "it must be there by its agents authorized to transact its business in that State" in order to be regarded as within the latter State. Each case, of necessity, must depend upon its own facts, but those facts must show that the corporation is actually doing business within the State in which the action is brought. (*International Harvester* v. *Kentucky*, 234 U. S. 579, 583.) We pointed that out in *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259, 265, 266, 268, 269), which counsel for appellants now seeks to distinguish, if not indeed to have formally overruled. There we said: "The plaintiff, a resident of this state, has brought suit against the Susquehanna Coal Company, a Pennsylvania corporation. The defendant's principal office is in Philadelphia; but it has a branch office in New York, which is in charge of one Peterson. Peterson's duties are described by the defendant as those of a sales agent. He has eight salesmen under him, who are subject to his orders. A suite of offices is maintained in the Equitable Building in the city of New York, and there the sales agent and his subordinates make their headquarters. The sign on the door is 'Susquehanna Coal Company, Walter Peterson, sales agent.' The offices contain eleven desks and other suitable equipment. In addition to the salesmen there are other employees, presumably stenographers and clerks. The salesmen meet daily and receive instructions from their superior. All sales in New York are subject, however, to confirmation by the home office in Philadelphia. The duty of Peterson and his subordinates is to procure orders which are not binding until approved. All payments are made by customers to the treasurer in Philadelphia; the salesmen are without authority to receive or indorse checks. A bank account in the name of the company is kept in New York, and is subject to Peterson's control, but the payments made from it are for the salaries of employees, and for petty

cash disbursements incidental to the maintenance of the office. The defendant's coal yards are in Pennsylvania, and from there its shipments are made. They are made in response to orders transmitted from customers in New York. They are made, not on isolated occasions, but as part of an established course of business. In brief, the defendant maintains an office in this state under the direction of a sales agent, with eight salesmen, and with clerical assistants, and through these agencies systematically and regularly solicits and obtains orders which result in continuous shipments from Pennsylvania to New York.

"To do these things is to do business within this state in such a sense and in such a degree as to subject the corporation doing them to the jurisdiction of our courts."

We also said: "Unless a foreign corporation is engaged in business within the state, it is not brought within the state by the presence of its agents. But there is no precise test of the nature or extent of the business that must be done. All that is requisite is that enough be done to enable us to say that the corporation is here (citing cases). If it is here it may be served (citing case). * * * The essential thing is that the corporation shall have come into the state. When once it is here, it may be served; and the validity of the service is independent of the origin of the cause of action."

Having that test before us, which the courts of this State have followed since, although the facts involved and the language employed in subsequent cases have necessarily varied (e. g., *Holzer* v. *Dodge Brothers*, 233 N. Y. 216; *Lillibridge, Inc.,* v. *Johnson Bronze Co.,* 247 N. Y. 548; *Gaboury* v. *Central Vermont Ry. Co.,* 250 N. Y. 233; *Yeckes-Eichenbaum, Inc.,* v. *McCarthy,* 290 N. Y. 437), we turn to the theory of plaintiff's cause of action.

In July, 1935, Selznick International Pictures, Inc. (hereinafter referred to as "International"), a corporation in which the defendant Selznick and another owned the controlling stock interest, entered into a contract with United which provided that International should produce and deliver at least four pictures *for distribution through United,* which as we have seen had its principal place of business in this State. International delivered two pictures. It then produced and distributed, through a corporation other than United, a picture called "Gone With the Wind," which resulted in very large profits for International. Thereafter, the defendant Selznick

caused International to be dissolved, in order to effect a favorable solution of certain tax problems. The dissolution had to be accomplished within a definite period and it was necessary, within such period, to obtain a release from United of the obligation of International to produce the two other motion picture photoplays. Thereupon, Productions was organized in August, 1940, assumed the obligation of International for the two pictures and United executed the desired release of International. The defendant Selznick, at that time, entered into a separate agreement with United under which he personally agreed that until such two additional motion pictures had been delivered, he would not, directly or indirectly, engage in the production or distribution of other photoplays. Neither picture, however, was produced under that contract by Productions. Subsequently, more than a year later, negotiations were entered into which resulted in the making of new agreements on October 4, 1941, as follows: (a) An agreement between United and Productions whereby Productions and the defendant Selznick were released from the aforesaid assumed International agreement; (b) A distribution agreement between United, Productions and defendant Selznick whereby Productions agreed to produce a number of motion pictures and United to distribute them; (c) A stock purchase agreement between United and Productions, providing for the purchase of a 25% stock interest in United by Productions and defendant Selznick and for the manner of payment for such stock; and (d) A loan agreement between United and Productions with respect to each picture to be produced. Under that loan agreement, $300,000 was advanced by United to Productions to be used by the latter to complete the purchase of three literary properties, " Keys to the Kingdom," " Claudia," and " Jane Eyre," and for the preparation of motion picture stories and scripts therefor and the payment of salaries to artists, directors and cameramen, with whom exclusive contracts had already been made, in connection with the productions thereof.

The complaint recites that it was represented by Productions and defendant Selznick that they would use the aforesaid literary properties and personal services in the production of motion picture photoplays. No pictures were produced or delivered by Productions under those agreements. On the contrary, Pro-

ductions assigned to Twentieth Century those personal service contracts and literary properties, upon which three photoplays were later based, for a substantial sum. After profiting by those transactions with Twentieth Century and again in order to reduce tax liability, as had been done for International, the defendant Selznick, on October 22, 1942, caused Productions (the name of which had been changed in May of 1942 to D. O. S. Productions, Inc.) to file with the Secretary of State of California a Certificate of Notice of Election to Wind Up and Dissolve. Four days later, Productions distributed all of its assets to its sole stockholder, the defendant Selznick. Thereafter, on November 14, 1942, Productions filed a Certificate of Dissolution with the Secretary of State of California. Prior to such claimed dissolution, defendant Selznick organized Vanguard on or about August 1, 1942, under the laws of California, and caused Productions to assign to it the contracts with United. Vanguard accepted the assignment and assumed those obligations. Down to the time of the commencement of the action by the service of the summons and complaint in July, 1943, Vanguard had not actually commenced the principal production of any motion picture.

The complaint alleging those facts, which for the purpose of this motion are taken to be true, seeks an accounting from the defendants Selznick, Productions and Vanguard as to the transactions with Twentieth Century, and a money judgment against the last mentioned company.

It is the theory of the plaintiff that Productions and Vanguard, during the period covered by the complaint, engaged solely in the business of dealing in rights to literary properties and entering into agreements for the personal services of actors, actresses, technicians and other personalities and the hiring of them out to others, and that a substantial part, if not all, of those activities were necessarily pursued in New York State. Thus, in November, 1941, Productions, this time *using United as agent,* purchased the motion picture rights to a novel called " The G-String Murders." All phases of that contract transaction were consummated in the State of New York through United which had its principal place of business here. In August, 1942, Productions sold and assigned those motion picture rights to a non-connected and stranger corporation at

a profit. The plaintiff points out that the defendant Selznick had nothing to do with the production of a motion picture photoplay for four years prior to the service of the complaint in July, 1943, and that Vanguard neither produced nor even commenced the principal production of any motion picture photoplay prior to that time. In reply, Vanguard *admits* that the " volume of work that Miss Flagg [to whom reference will later be made] does with respect to negotiations under instruction, with authors, artists, directors, agents, and publishers is very, very small in relation to all such work that Vanguard Films, Inc., does and does not comprise more than 5% of all such work." If all that was ever done by Productions and Vanguard, up to the commencement of this action, was work similar to that done by Miss Flagg, her work was substantial and would more than meet the test formulated in the *Tauza* case (*supra*). The purchase in New York City of literary products and scripts and the obtaining of contracts with actors and actresses for *actively producing* motion picture companies would appear to be necessary for their existence, whether in California or elsewhere. It would appear to be as important to them as would the purchase of coal for a manufacturing plant. Much more was it a necessity in this case where no production was attempted. That brings us to Miss Flagg.

She was an employee in charge of the office in New York City for Productions for a brief period and then for Vanguard. Those offices were originally at 630 Fifth Avenue, New York City, and were later moved to 515 Madison Avenue, New York City. There were two other employees in the Vanguard office with her and the salaries of the three aggregated $10,000 per year. Productions and Vanguard each in turn leased the office space at an annual rental of $2,600, and each paid an occupancy tax to the City of New York. Occupancy taxes are paid by those who occupy premises in the City of New York " for any gainful purpose." (Administrative Code, ch. 17, tit. C, § C 17–4.0, subd. a, formerly ch. 44, tit. B, § 1012–1.0, subd. [a].) Its payment is consistent only with the doing of business here. The office was listed in the Motion Picture Almanac and in the Manhattan telephone directory. Each corporation had a bank account in a New York City bank. Various Selznick enter-

prises had, from time to time, obtained financing through the Bankers Trust Company and in September, 1943, the vice-president and treasurer of Vanguard, who had also been a director and treasurer of Productions, discussed, at least in a limited way, in New York, a loan agreement for the financing of a picture to be produced by Vanguard and the increasing of a loan, which was already under consideration, from $980,000 to approximately $2,000,000. The trust company, under Banking Law, section 105, could transact no part of its banking business at any place other than in the State of New York, and the negotiations for the loan must be found to have been transacted in this State. Apart from that, however, Vanguard had clearly been actively soliciting business here as a continuous and systematic course of conduct. In May, 1943, the following letter was sent to a number of literary agents and other persons interested in disposing of literary properties:

" VANGUARD FILMS, INC.

515 MADISON AVENUE        NEW YORK, N. Y.

May 28, 1943

Coincident with David O. Selznick's re-entry into active production early this summer on a soon-to-be-published book which he has recently purchased, his New York office is interested in securing important literary material for subsequent production.

Miss Elizabeth Carver will be associated with this office in an editorial capacity, beginning June 1st, and all submissions should be directed to her attention.

Please note also that the name of Mr. Selznick's new company is Vanguard Films, Inc.

HARRIETT FLAGG

*Eastern Representative* "

It will be noted that there was no California address mentioned in the letter. The activity of Miss Carver in the Vanguard office may be guaged by her own reported statement that she " would not have any time to read the complaint in this action since she was kept extremely busy reading scripts for Mr. Selznick, and that as a matter of fact she read about twenty plays and books a week."

There can be no question but that Productions, prior to its claimed dissolution in November, 1942, was actively engaged in

a substantial part of its business in New York. When Productions purchased the motion picture rights to the play "Claudia," one of the clauses in the contract read as follows: "Twenty-second: This Agreement is to be construed and is to take effect as a contract *made* and performed or to be performed in the State of New York and shall be governed in all respects by the laws of the State of New York." (Underscoring supplied.) It was "Claudia" which was thereafter paid for with moneys advanced by United, which was to be the distributor, but nevertheless sold, together with other literary properties, by Productions to Twentieth Century, a New York corporation, at a substantial profit. In the case of Productions, the buying of literary properties was as important as the selling.

It is true that Vanguard did eventually release one picture for United but under circumstances which further tend to establish the fact that neither Productions nor Vanguard was engaged in doing anything except purchasing and selling literary properties until after the service of the summons and complaint. Two months thereafter, in September, 1943, the production of Vanguard's first picture was commenced but was not released until July 20, 1944, one year after the service of the summons.

Having reached the conclusion that Productions and Vanguard were " here " within the meaning of the *Tauza* case (*supra*), there remains the question whether Productions has withdrawn from New York so that it may not be sued in this State. As we have seen, Productions was dissolved in order to terminate tax liability as of a definite taxable period. It is the contention of plaintiff that no attention was paid to the dissolution for any purpose other than the termination of tax liability, and he points out that long after November 14, 1942, Productions continued its tenant's listing at 515 Madison Avenue and in the telephone directories, and that there was a mere transference of Miss Flagg from Productions to Vanguard with continuity of a course of business conduct. As a matter of fact, Productions continued its office-building listing until after the summons and complaint were served, which was more than eight months after the claimed dissolution. We do not think that those items, however, are determinative. It is urged by Productions that after the distribution of all its assets to its sole stockholder, the defendant Selznick, there was complete

liquidation and there was no business to be wound up. The difficulty with that is that there is no affidavit presented to us by the defendant Selznick, who was the sole stockholder, upon that point. The important consideration, it seems to us, is that the State of California has provided in its Civil Code, section 399, in part, as follows: " Continuation of corporation after dissolution: A corporation which is dissolved by the expiration of its term of existence, by forfeiture of existence by order of court, or otherwise, nevertheless shall continue to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it, and enabling it to collect and discharge obligations, dispose of and convey its property, and collect and divide its assets, but not for the purpose of continuing business except in so far as necessary for the winding up thereof. No action or proceeding to which a corporation is a party shall abate by the dissolution of such corporation or by reason of proceedings for dissolution and winding up thereof."

That section is entitled to recognition and enforcement by the courts of this State. (*Sinnott* v. *Hanan*, 214 N. Y. 454, 459.) We have a similar statute in this State (Stock Corporation Law, § 105, subd. 8). Under the California statute, the existence of the corporation is continued for the purpose of prosecuting and defending actions by or against it, with reference to controversies which arise by reason of acts done in this State while it was here transacting business. In other words, a California corporation may not transact business in this State and, after committing wrongful acts which require in justice an accounting by it, escape by dissolving in California. California has in effect forbidden that by statutory provision. (See, also, Fletcher Cyclopedia Corporations [Permanent Edition] Vol. 17, §§ 8580, 8583.)

The first and second questions should be answered in the affirmative, with costs.

DESMOND, J. As to defendant Vanguard Films, Inc., I agree with Judge CONWAY's opinion for affirmance. I think, however, that there should be a negative answer to the other certified question: " Was the defendant, David O. Selznick Productions, Inc., doing business within the State of New York to such an extent as to subject it to the service of process in New York? " That cor-

porate defendant (herein called " Productions ") was formally dissolved in California, and all its assets disposed of on or before November 16, 1942. Eight months later, on July 20, 1943, service on it of process in this suit was attempted to be made in this State. The findings of the courts below that Productions was still doing business in New York on July 20, 1943, were, necessarily, based on the showing that its name continued to be listed, until after that date, in the New York City telephone directory and in the directory of tenants in the lobby of the building at 515 Madison Avenue, New York City, where it had formerly had an office under lease. Such a showing is not enough.

The California statute (California Civil Code, § 399) referred to in Judge Conway's opinion, like our Stock Corporation Law, section 105, declares that a dissolved corporation continues to exist, after dissolution, for the purpose of defending suits. Thus its formal declaration of dissolution did not, in and of itself, operate to prevent the maintenance of suits against it. It was still alive for such purposes, but its continued existence as a corporation is not the question here. Our inquiry is solely as to whether or not it was still doing business in New York State in July, 1943. On the record before us, the answer must be " no."

The orders should be reversed and the motion to vacate service of process as to David O. Selznick Productions, Inc., granted, with costs in all courts; otherwise the order should be affirmed with costs. The first question certified should be answered in the negative and the second question certified in the affirmative.

LEHMAN, Ch. J. (dissenting in part). I agree with the majority of the court that David O. Selznick Productions, Inc., is not doing business in this State. I do not agree with the conclusion that Vanguard Films, Inc., is doing business here. Miss Flagg, in charge of its office in New York, was employed as " literary agent," but she and her assistant had authority only to *receive* " literary material for subsequent production " which might be submitted, and to maintain contact, " in accord-ance with instructions from the principal office of the corporation in California, with such artists, directors, agents and publishers as may be actually located in New York City." She

and her assistant read manuscripts and reported to the staff of the corporation in California. They have no power to enter into any contract in behalf of the corporation, or even to negotiate, except " under instructions " sent from the California office. When the corporation decides to purchase literary material, a form of contract is prepared in California and sent to the New York office. It may be signed in New York by the seller of such material, but it is signed in behalf of the corporation by officers or executives in California. The bank account in New York has never had a balance of over $1,600 and has been used only for the expenses of the office. No other business transactions in behalf of the corporation have been regularly carried on in New York and, concededly, no officer or executive of the corporation resides, or has been there on business of the corporation except on isolated occasions where discussion on important matters with New York residents was desirable. This proof, in my opinion, does not meet the test formulated in *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259). The orders should be reversed and the motion to vacate the service of process in New York should be granted.

THACHER, J., concurs in opinion by CONWAY, J., in which LOUGHRAN, LEWIS and DESMOND, JJ., concur upon the appeal of the defendant Vanguard Films, Inc.; LEHMAN, Ch. J., LOUGHRAN, RIPPEY and LEWIS, JJ., concur in opinion by DESMOND, J., upon the appeal of David O. Selznick Productions, Inc.; LEHMAN, Ch. J., dissents in opinion upon appeal of Vanguard Films, Inc., in which opinion RIPPEY, J., concurs.

Ordered accordingly. (See 294 N. Y. 662.)