SYLVIA GELLER, Plaintiff, *v.* MACON, DUBLIN & SAVANNAH RAILROAD COMPANY, Defendant.

City Court of the City of New York, Special Term, New York County, November 18, 1947.

*Irving D. Friedman* for plaintiff.

*Hugh P. Mullen* for defendant appearing specially.

MAX J. WOLFF, Referee. The defendant, a railroad corporation organized under the laws of Georgia and not authorized to do business in the State of New York, has appeared specially and has moved to set aside the service of a summons within the city of New York upon its assistant secretary. The question here is whether it has been doing business within the city of New York of a kind and to an extent sufficient to bring it within this court's jurisdiction.

The defendant's railroad lines are wholly in Georgia. It has no bank account or other property in New York. In 1907, it executed within the city of New York a first mortgage trust indenture covering a bond issue amounting to approximately $1,500,000. The mortgaged property, real and personal, lies within the State of Georgia. One of the trustees, the New York Trust Company, is located in the city of New York. The interest coupons were all made payable at the office of the New York Trust Company in this city, and the principal of the bonds, which matured January 1, 1947, was also made payable at the same place. The mortgage indenture required the defendant to maintain either an office or agency in the borough of Manhattan for the purpose of registering the bonds. It also provided that auction sales under the mortgage were to take place in New York. All bonds issued under the mortgage were delivered to the trustee in the city of New York for validation.

In the autumn of 1946, the defendant made plans to extend the maturity of the bonds from January 1, 1947, to January 1, 1972. The president of the defendant and its comptroller came

to New York on three or four occasions and consulted with members of a New York law firm concerning the preparation and promulgation of a plan of extension. As a result of these conferences such a plan was drawn in the office of defendant's New York lawyers. It was printed and distributed to numerous persons. In connection with this plan and its approval, which was required to be obtained from the Interstate Commerce Commission, several conferences were held in New York between the defendant's president, its comptroller, officers of the New York Trust Company, and defendant's lawyers.

Certain of defendant's officers solicited various bondholders in the city of New York to deposit their bonds under this extension plan and spent considerable time here, the evidence does not disclose how much, 'for that and other purposes associated with the plan. The New York Trust Company was named subdepository for the purpose of receiving bonds from holders consenting to the extension.

The plan has not yet become effective as apparently a sufficient number of bonds have not been deposited. Between the fall of 1946, and the summer of 1947, bonds in the face amount of approximately $587,000 have come into the possession of the New York Trust Company as subdepository.

The approval of the defendant's board of directors to the promulgation of the plan was given in Georgia, where all meetings of the directors were held.

Correspondence with bondholders and others concerning the plan was conducted from the office of defendant's New York lawyers, to whom all inquiries from bondholders and others (even those made to the company in Georgia) were referred. Apparently it was thought best that the correspondence be handled by one acting as an officer rather than as an attorney, and a member of the said firm of New York lawyers was elected assistant secretary of the defendant. As such officer this lawyer has corresponded and communicated with bondholders and others about the plan. His duties as assistant secretary were confined solely to the preparation of the plan and the bringing about of its acceptance by bondholders; and included the working out of legal and other details with the Interstate Commerce Commission and with the New York Trust Company as trustee under the mortgage and subdepositary under the plan. This assistant secretary, Mr. J. E. Carroll, was elected in the fall of 1946 and remained in that office until March, 1947, when he was served with a summons in this action. The day after such service was made upon him he resigned as assistant secretary,

but continued without change his work in connection with the plan of extension.

The proposed plan in printed form, as sent out to bondholders and others, contained the following direction:

"Any inquiries regarding the foregoing should be addressed to J. E. Carroll, Assistant Secretary, Macon, Dublin and Savannah Railroad Company, 23rd Floor, 15 Broad Street, New York 5, N. Y.

Very truly yours,
Macon, Dublin and Savannah Railroad Company
By E. C. Cheney
Executive-Vice-President."

The 23d floor of 15 Broad Street is the law office of Mr. Carroll's firm. The plan was mailed to the known bondholders and to others from that office in envelopes upon which was printed the following return address:

"Macon, Dublin & Savannah Railroad Company
Attention: J. E. Carroll, 23rd Floor
15 Broad Street
New York 5, N. Y."

Follow-up letters in similar envelopes were sent to bondholders, and in some of these, self-addressed stamped post cards were included, which had been addressed as follows:

"Macon, Dublin & Savannah Railroad Company
Care of Mr. J. E. Carroll
15 Broad Street
New York 5, N. Y."

The defendant even printed letterheads reading:

"Macon, Dublin & Savannah Railroad Company
15 Broad Street
23rd Floor
New York 5, N. Y."

and a supply of these letterheads and of envelopes containing a return address the same as the letterhead was kept in the office of defendant's lawyers and used to write to bondholders, to the trustee, to the defendant's home office in Georgia, and to others. The evidence does not show the extent of this correspondence but it is a fair inference that approximately five hundred such letterheads and envelopes were used, all in connection with the attempt to secure sufficient consents from bondholders to make the plan effective and to comply with the necessary legal details incident to the adoption of the plan.

All of the shares of the capital stock of the defendant are wholly owned by Seaboard Airline Railroad Company, which, though a foreign corporation, has offices in New York. The president of the defendant is the same person as the president of the Seaboard Airline Railroad Company. The freight agent representing the Seaboard Company in New York has been instructed by the general eastern freight agent of that railroad to favor the defendant in routing freight, so that whenever possible, other things being equal, Seaboard uses defendant as a connecting carrier rather than some other line.

It appears also that one Owen, a freight agent of the defendant, visits New York every six weeks or so and that on these visits he solicits freight business for the defendant. The nature and extent of such solicitation was not shown or the amount of the business resulting from it. The evidence concerning solicitation may be dismissed from consideration. Visits by one man, each of a few days' duration, occurring six weeks apart, do not constitute a continuous course of conduct sufficient to bring the defendant within the jurisdiction, especially as it was not shown that such solicitation resulted in a substantial volume of business. Of course, it is a matter of degree but the proof here falls short of the standard indicated in the " solicitation " cases (*Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259; *International Harvester Co.* v. *Kentucky,* 234 U. S. 579; *International Shoe Co.* v. *State of Washington,* 326 U. S. 310).

We come then to the consideration of defendant's activities in connection with the mortgage and with the plan of extension. I think it is necessary to hold that the provision in the mortgage for the payment of bonds and coupons in the city of New York at the office of the New York Trust Company and the fact that these payments were made at such place did not constitute a doing of business in New York (*Toledo Railways & Light Co.* v. *Hill,* 244 U. S. 49).

The *Toledo Railways* case also indicates (if authority be needed for so obvious a proposition) that the residence of an officer here did not put the company within the jurisdiction. It is not the residence of the officer but his activities that are material.

It seems to me that aside from solicitation of bondholders, what was done in New York in connection with the preparation of the plan of extension was mostly legal work. It would be going too far to hold that a foreign corporation is here because its officers have visited the city for the purpose of consulting with local lawyers and working out with them a plan to refinance

or rearrange a mortgage bond issue. That the successful outcome of the refinancing or rearrangement plan is of first importance to the company does not alter the case. It may be true that defendant's officers came to New York, and selected it as the center of activity in connection with the plan of extension, because this city offered better opportunities for making contact with bondholders and because the chances of getting a sufficient number of consents from bondholders were greater if solicitation and other operations were conducted from New York. But the activities of the defendant in New York, connected as they were exclusively with the proposed extension plan (except for some solicitation of freight, as above shown), were by no means as closely and importantly related to the general, over-all business of the defendant as those which, in *Pomeroy* v. *Hocking Valley Railway Co.* (218 N. Y. 530), were held sufficient to constitute the doing of business.

The distinguishing feature of the *Pomeroy* case seems to me to be that there the board of directors and executive committee held several meetings each year within the city of New York, so that it could be fairly inferred that from New York the directors and executive committee exercised supervision over the management and business of the Hocking Valley company, a supervision not limited to any particular phase or part of its affairs. The Hocking Valley company also had certain rooms set aside in the office of another railway company, which owned all of the shares of its capital stock, and these rooms were used as its office. It had a resident secretary within the city of New York whose duties, unlike those of the assistant secretary in the present case, were not confined to any one matter or affair. The office of the railroad company in the cited case was a real office, not as in the instant case, one designated as such on letterheads and envelopes, but actually nothing more than the law office of the attorneys who counselled this defendant.

On the whole, I would say that the facts of the present case place it somewhere between *Toledo Railways & Light Company* v. *Hill* (244 U. S. 49, *supra*) and *Pomeroy* v. *Hocking Valley Railway Company* (218 N. Y. 530, *supra*) but do not bring it sufficiently close to the *Pomeroy* case to make that decision applicable. It seems to me also that the activities of the defendant here are so much less important than were those of the defendant in *Barnett* v. *Texas & Pacific Railway Co.* (145 F. 2d 800) as not to be comparable. Yet even in that case Circuit Judge SWAN could not agree with the majority of the court that the defendant was doing business within the jurisdiction. And when subsequently it gave up issuing bills of

lading and selling tickets in New York, it was held by the district court, that notwithstanding other activities more extensive than those shown in the case at bar, it had ceased to do business here (*Kilpatrick* v. *Texas & Pacific Railway Company*, 72 F. Supp. 635). The district court held that registering bonds or certificates, paying interest coupons and principal, or dividends on stock, were not sufficient to bring it within the jurisdiction.

The plaintiff relies on *Chaplin* v. *Selznick* (293 N. Y. 529) but I think that the local activities of the defendants in that case were so closely related to their essential business, that of producing moving pictures, that no parallel can be drawn between the *Chaplin* decision and our case. In *Chaplin* v. *Selznick* (*supra*) the defendants maintained a New York office with several employees, one of whom was engaged, all day and every day, in reading manuscripts, with a view to their use for production of pictures.

It was pointed out in the *Chaplin* case, in *Pomeroy* v. *Hocking Valley Railway Company* (218 N. Y. 530, *supra*) and in *Tauza* v. *Susquehanna Coal Company*, (220 N. Y. 259, *supra*) that there are no precise tests or rules which can be applied and that each case must depend upon its own facts. I am of the opinion that the facts here do not show that the defendant has been doing business of a kind and to an extent sufficient to put it within the jurisdiction.

Accordingly, I find that this court lacks jurisdiction of the defendant and that the service of the summons upon it should be vacated.

COLEMAN, J. The report of Max J. Wolff, Esquire, Referee of this court, is confirmed on his opinion. The motion to vacate the service of the summons on the defendant is granted. The action is dismissed for lack of jurisdiction of the defendant.