STEVE LEDERMANN, Plaintiff, *v.* PENNSYLVANIA RAILROAD COMPANY et al., Defendants.

City Court of the City of New York, Special Term, New York County, January 10, 1949.

*Seymour Stone* for plaintiff.

*Vernon S. Jones* and *Joseph M. Cunningham* for Western Maryland Railway Company, defendant appearing specially.

COLEMAN, J. The defendant, Western Maryland Railway Company, appearing specially, moves to dismiss this action as to it on two grounds: first, it is not doing business in the State of New York and so is not amenable to process here; second, that the maintenance of the action here constitutes an undue burden on it in its capacity of carrier in interstate commerce.

The action was brought by a resident of New York against the Pennsylvania Railroad Company and the Western Maryland. The complaint alleges that the plaintiff in Pennsylvania delivered certain machinery and equipment to Western Maryland for shipment to another point in Pennsylvania under an order bill of lading, "Notify General Materials Company" (the impleaded defendant) and that Western Maryland or the Pennsylvania, which is said to have been the delivering carrier, released the machinery to General Materials "without the plaintiff's permission or consent."

The Western Maryland, a corporation organized under the laws of Maryland and of Pennsylvania, operates a railroad through Maryland, Pennsylvania, and West Virginia. Its lines do not enter the State of New York and its main office is in Baltimore. But it has offices for the solicitation of freight in New York City and in Buffalo and the board of directors sometimes meet in the city of New York.

The office which the defendant maintains in the city of New York is in charge of its General Eastern Agent. There are ten other employees of the defendant in it, all under the direction of the General Agent. The freight orders solicited by these eleven are subject to acceptance of the defendant's main office in Baltimore (but a railroad is not free to reject freight offered for carriage within its tariff regulations and acceptance of orders by the main office can hardly have the significance here that it might have in other commercial transactions). Of the shipments that enter or leave the State of New York (over the tracks of connecting carriers) 5% of them are "as a result of the solicitation of the New York office," (affidavit of Haworth, defendant's vice-president.) The activities of the Buffalo office are not disclosed; freight is solicited there, but we are not told with what success.

The defendant maintains three bank accounts in New York City, one of which "exists solely for the convenience of shippers who may send their checks to the New York office in payment of contracts for the transportation and storage of grain," (Haworth). It is said that these contracts are executed and

performed outside New York but we are not told whether any of these shipments were solicited by the New York office or the Buffalo office. " If there may be inference of silence, we draw them against the party who bears the burden of persuasion." (*International Milling Co.* v. *Columbia Transportation Co.,* 292 U. S. 511, 516.)

It seems to me that enough has been shown of such general business activities even by the " solicitation plus " standard as to bring the defendant within the jurisdiction of the New York courts. The maintenance of an office here by the defendant in its own name, the possession of a bank account in the city of New York for the convenience of shippers as well as two other " reserve " and " inactive " accounts, the steady solicitaton of freight by eleven employees including the General Eastern Agent, as a result of which the defendant does obtain freight business (it certainly does not limit its efforts to 5%) its maintenance of a similar office in Buffalo — all this is enough to enable me to say that the defendant is doing business here and is subject to our jurisdiction. (Cf. *Kilpatrick* v. *Texas & Pacific Ry. Co.,* 166 F. 2d 788; see *Chaplin* v. *Selznick,* 293 N. Y. 529.) The strictly " operating " activities of the railroad in *Yeckes-Eichenbaum, Inc.,* v. *McCarthy* (290 N. Y. 437) were considerably less in scope and in extent.

Added to all this is the fact that the defendant's board of directors sometimes holds meetings in New York City, " for the convenience of the three members of the board of directors who reside in New York City." Thus, in a sense, the defendant's board, operating from the city of New York, sometimes exercises the management and control over the affairs and business of the defendant, a factor that was thought significant in *Pomeroy* v. *Hocking Valley Ry. Co.* (218 N. Y. 530).

I conclude then that the defendant has been doing business within the city and State of New York of a kind and to an extent sufficient to subject it to the jurisdiction of the court, sufficient, that is, to enable one to say that the service upon its agent here is notice to the corporate entity that a claim is being made upon it and that the claim fairly is justiciable in our courts. (Cf. *International Shoe Co.* v. *Washington,* 326 U. S. 310; *Kilpatrick* v. *Texas & Pacific Ry. Co.,* 166 F. 2d 788, *supra.*) The defendant's reliance upon *Green* v. *Chicago, Burlington & Quincy Ry. Co.* (205 U. S. 530) is misplaced. The *Green* case (*supra*) decided in 1907, was later said to be " an extreme case," although " we have no desire to depart from that decision."

(*International Harvester Co.* v. *Kentucky,* 234 U. S. 579, 586.) And the *International Shoe* case (326 U. S. 310, *supra*) again without overruling the *Green* case (*supra*), gave a new explanation to corporate " presence " (cf. *Kilpatrick* case, *supra,* p. 791). Other criteria have been established since the *Green* case calling for a consideration of factors not then considered relevant or significant.

As to the second objection to the court's jurisdiction, in view of the fact that the plaintiff is a bona fide resident of this State and was such a resident when the cause of action arose, and in view of the activities of the defendant within this jurisdiction, I do not believe that the maintenance of this action here constitutes an undue burden on interstate commerce. This is so, particularly as the events which gave rise to the cause of action occurred in the neighboring State of Pennsylvania where all those who participated in the transaction on behalf of this defendant are now presumably located. (Cf. *International Milling Co.* v. *Columbia Transportation Co.,* 292 U. S. 511, *supra,* and cases discussed therein; *Hirliman* v. *Southern Pacific Co.,* 268 App. Div. 192.) The *Hirliman* case (*supra*) involved a seemingly greater burden on interstate commerce than this one; the shipment there was from California to Virginia; yet the court saw no grounds for dismissing the complaint.

I point out, too, that although Western Maryland is being sued as the contracting party, it is the Pennsylvania Railroad, the delivering carrier, which is really being charged with misdelivery of the merchandise. That defendant has appeared generally and has answered to the merits. We may assume that the Western Maryland needs no witnesses to meet the claim of alleged misdelivery and we may also assume that it can safely rely on the codefendant to produce what witnesses it may have on this issue. In this respect, the case differs from *Denver & Rio Grande Western R. R. Co.* v. *Terte* (284 U. S. 284).

The Western Maryland's motion to dismiss the action against it is denied, and it may serve its answer within ten days.