**Dr. John J. FARBER, Plaintiff,**

v.

**ZENITH LABORATORIES, INC., Defendant.**

**No. 91 CIV. 350 (KMW).**

United States District Court, S.D. New York.

Oct. 14, 1991.

Paul Falick, New York City, for plaintiff.

Peter M. Dodson, Cadwalader, Wickersham & Taft, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

### KIMBA M. WOOD, District Judge.

Dr. John J. Farber filed this diversity action against defendant Zenith Laboratories, Inc., pursuant to Zenith's by-laws and New Jersey law. Zenith is a New Jersey corporation that manufactures and markets generic pharmaceutical products. Farber, a New York resident, served as chairperson of the board of Zenith, from 1979–1990. He seeks indemnification for legal fees and expenses he incurred in connection with an investigation by the Securities and Exchange Commission. Zenith moves to dismiss the case against it for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). For the reasons set forth below, the court denies Zenith's motion to dismiss.

## DISCUSSION

The parties concede that personal jurisdiction in this action is governed by New York law. *See Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir. 1963) (en banc). Farber argues that this court has jurisdiction over Zenith pursuant to New York Civ.Prac. L. & R. (CPLR) § 301 (McKinney) ("§ 301") or pursuant to CPLR § 302(a)(1) ("§ 302(a)(1)"). Because this court finds that there is jurisdiction over Zenith under § 301, the 302(a)(1) arguments are not addressed.

Plaintiff bears the burden of proving that the court has personal jurisdiction over defendant, *Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985). Because no evidentiary hearing was held here, however, Farber need make only a *prima facie* showing that jurisdiction exists, *id.* Further, because the court did not hold a hearing or trial on the merits, the court must construe all pleadings and affidavits in the light most favorable to plaintiff and must resolve all doubts in plaintiff's favor. *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990); *Hoffritz*, 763 F.2d at 57.

Section 301 permits a court to exercise jurisdiction over a defendant who is "doing business" in New York. Zenith is a New Jersey corporation located in New Jersey. Farber asserts that Zenith is "doing business" in New York because it regularly conducts a significant portion of its board meetings, executive meetings, and shareholders' meetings ("supervisory meetings") in New York. There is no dispute between the parties that during the period from 1978 to 1989, at least twenty-four out of sixty-seven Board meetings were in New York; at least four out of nine shareholders' meetings were in New York, and at least twelve (and, according to plaintiff, fifteen) out of twenty-two executive meetings were in New York, Affidavit of Ruth M. Wallestad; Letter Affidavit of John J. Farber (Aug. 5, 1991). In addition, Farber alleges that, as an ongoing matter, many of Zenith's commercial activities, negotiations, legal matters, and financial arrangements were conducted in New York, and that at least two of its directors (including himself) lived in New York during the period from 1979–1989, Affidavit of Dr. John J. Farber (April 4, 1991) ¶¶ 3–4. Farber—former chairperson of the Board—also avers upon information and belief—that Zenith products are sold in pharmacies throughout New York, *id.* at ¶ 8.

Zenith concedes the plethora of supervisory meetings held in New York between 1978 and 1989, but argues that this is not a basis for personal jurisdiction under the "doing business" category. It argues that "Zenith is not in the business of holding board meetings or executive committee meetings. It manufactures and sells pharmaceutical products." Def.'s Reply Memorandum at 6. The parties thus seem to agree that the jurisdictional issue under § 301 turns largely on whether the regular holding of supervisory meetings counts as "doing business" for jurisdictional purposes.

The most probative case on the issue before this court is *Pomeroy v. Hocking Valley R. Co.*, 218 N.Y. 530, 113 N.E. 504 (1916). In that case, the defendant corporation neither owned nor operated any physical property in New York, and, as in this case, several of its supervisory meet-

ings were in New York and two of its key officers (president and secretary) resided in New York. The Court of Appeals thought it highly significant that "several meetings of its board of directors and executive committee are held" in New York, *id.* at 534, 113 N.E. 504. "It is an indispensable condition and incident to these latter operations and to the conduct of the business that general supervision should be exercised over the management of the corporation by its board of directors, executive committees and executive officials, ...", *id.,* at 536, 113 N.E. 504. Primarily on this basis, the Court found that the defendant corporation *was* doing business in New York.

*Pomeroy* directly supports Farber's argument and undercuts Zenith's. Both the holding of that case and its underlying rationale have been followed numerous times. *See, e.g., Stark v. Howe Sound Co.,* 141 Misc. 148, 252 N.Y.S. 233 (Sup.Ct.), *aff'd,* 234 A.D. 905, 254 N.Y.S. 959 (1931) (foreign corporation doing business in New York if it is "supervised, directed, and controlled by its executive officials" in New York); *Stockton v. Goodyear Tire & Rubber Co.,* 124 Misc. 213, 208 N.Y.S. 209, 211 (Sup.Ct.1924) (following *Pomeroy,* board meetings in New York a basis for finding "... the defendant is continuously performing a very substantial portion of its business within this jurisdiction ..."). *See also Geller v. Macon,* 190 Misc. 903, 75 N.Y.S.2d 818, 823 (City Ct.1947) ("[t]he distinguishing feature of the Pomeroy case seems to me to be that there the board of directors and executive committee held several meetings each year within the city of New York, so that it could be fairly inferred that from New York the directors and executive committee exercised supervision over the management and business of the Hocking Valley Company, a supervision not limited to any particular phase or part of its affairs"). In *Thompson v. Armour,* 68 N.Y.S.2d 475 (Sup.Ct.1947), the court found it important that "formal and informal meetings of the Boards of Directors of these corporations are held in this state ...", *id.* at 477. Significantly, the court took supervisory meetings into account even though only *some,* and not all, of those meetings were held in New York. This understanding of *Pomeroy* was more explicit in *Ledermann v. Pennsylvania R. Co.,* 193 Misc. 941, 85 N.Y.S.2d 485 (City Ct. of N.Y., Spec. Term, New York County 1949). "Added to all this is the fact the defendant's board of directors sometimes holds meetings in New York City, 'for the convenience of the three members of the board of directors who reside in New York City.' Thus, in a sense, the defendant's Board, operating from the City of New York, sometimes exercises the management and control over the affairs and business of the defendant, a factor that was thought significant in *Pomeroy v. Hocking Valley R. Co." Ledermann,* 85 N.Y.S.2d at 487 (cite omitted).

The Second Circuit has also considered the existence of supervisory meetings to be important for "doing business." In *Bertha Building Corp. v. Nat'l Theatres Corp.,* 248 F.2d 833 (2d Cir.1957), the court cited *Pomeroy,* and quoted the district court's finding that *some* of the board of directors meetings and executive meetings and corporate meetings were held in New York, *id.* at 841, n. 3. Based in part on that finding, it stated that "... it is irrefutable that National was amenable to process in New York during the relevant period," *id.,* at 841–42. *See also, Ciprari v. Servicos Aereos Cruzeiro do Sul, S.A.,* 232 F.Supp. 433 (S.D.N.Y.1964) (citing *Pomeroy* with approval and holding that activities constituting indispensable condition of business count as doing business under New York law).

The *Pomeroy* line of cases thus favors a finding that the "doing business" category applies to Zenith. It might be objected that *Pomeroy* and its progeny hold that the presence of supervisory meetings is a *factor* to be combined with other factors for a finding that the defendant is "doing business" in New York. The presence of supervisory meetings is not a sufficient basis on its own for such a finding, the objection would continue. In support of this point, it must be noted that the *Pomeroy* cases—including *Pomeroy* itself—always mention other contacts with the state

of New York beyond the supervisory meetings.

This objection is not well taken. First, as is indicated above, Farber has asserted several other contacts between Zenith and New York, including, for example, negotiations, financial dealings, and the presence of its products in New York pharmacies. These other contacts are factors which do add to a finding that Zenith was doing business in New York. But even if this were not the case, the logic of *Pomeroy* would still lead to a finding of personal jurisdiction status here. *Pomeroy* stands for the proposition that holding supervisory meetings is itself doing business. It follows that no other *sort* of contact is necessary for a conclusion that Zenith is doing business in New York; the question is only whether there were enough contacts of this sort.

Zenith opposes jurisdiction here by citing *Joseph Walker & Sons v. Lehigh Coal & Navigation Co.*, 8 Misc.2d 1005, 167 N.Y.S.2d 632 (Sup.Ct.1957), in which three board meetings in New York were held insufficient for "doing business" status. A close look at *Joseph Walker* supports Farber's position, however. That case is premised on the general principle that a defendant cannot be subject to personal jurisdiction under § 301 unless it is " 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.' " *Landoil*, 918 F.2d at 1043 (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981)) (additional citations omitted). It rejected the proposition that jurisdiction could be conferred on the basis of a mere three board meetings on the ground that "this assuredly falls far short of a showing of such conduct which could be construed to be of such permanence or continuity as to constitute a course of doing business here." *Joseph Walker*, 167 N.Y.S.2d at 634.

*Joseph Walker* should thus be understood to shape the *Pomeroy* holding: where the exercise of supervisory control is systematic and continuous (or permanent), it may serve as a basis for a finding that the corporation is doing business in New York for purposes of personal jurisdiction. Obviously, the supervisory control exerted in this case far exceeds that in *Joseph Walker*. Twenty-three of Zenith's Board meetings and roughly half of its executive and shareholder meetings over the course of more than a decade took place in New York. There were also numerous dealings of Zenith's executives in New York on matters of fundamental importance to corporate supervision. Recognizing that the test under § 301 is pragmatic and depends on the circumstances of the particular case, *Landoil*, 918 F.2d at 1043, this court holds that on the facts of this case, Zenith's supervisory activities in New York were sufficiently systematic, continuous, and permanent to qualify it as "doing business" in New York. Zenith is thus subject to personal jurisdiction under CPLR § 301.

## CONCLUSION

For the reasons stated above, the court denies defendant Zenith's motion to dismiss for lack of personal jurisdiction.

SO ORDERED.